**In re TOP SPORT DISTRIBUTORS, INC. f/k/a Top Sports Distributors, Inc., a Florida corporation, Debtor.**

**Herbert S. FREEHLING, Trustee, Plaintiff,**

**v.**

**Alvin GARSON and Bruce T. Davis, Defendants.**

**Bankruptcy No. 83–00138–BKC–SMW.**
**Adv. No. 84–0025–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

June 21, 1984.

Howard J. Berlin, Miami, Fla., for defendants.

William C. Stalions, Fort Lauderdale, Fla., for trustee, plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard upon an Amended Complaint to recover fraudulent and preferential transfers allegedly made by the Debtor to the Defendants. In lieu of a trial before this Court and pursuant to stipulation and agreement between the parties, this Court considered as the evidence in this cause, AGREED and STIPULATED FACTS filed by the parties together with the following exhibits attached to said Stipulation:

A. Affidavit of both Mr. GARSON and Mr. DAVIS.

B. The Debtor's General Ledger for 1982.

C. The Debtor's Balance Sheet for 1982.

D. The Debtor's Statement of Income for 1982.

E. The deposition of BRUCE DAVIS taken on September 6, 1983.

F. The Debtor's Pension and Profit Sharing Agreement.

The Court having considered the above referenced material as the evidence in this cause and having considered the Memorandums of Law submitted by the parties as their final argument and being otherwise fully advised in the premises, does hereby render the following Findings of Facts and Conclusions of Law:

## FINDINGS OF FACT

TOP SPORT DISTRIBUTORS, INC., f/k/a TOP SPORTS DISTRIBUTORS, INC. (hereinafter "TOP SPORT"), a Florida corporation is a Debtor under Chapter 7 of the United States Bankruptcy Code pursuant to an Involuntary Petition filed on January 26, 1983. The Defendants ALVIN GARSON (hereinafter "GARSON") and BRUCE T. DAVIS (hereinafter "DAVIS") were the sole officers, directors and shareholders of TOP SPORT since its incorporation in 1974. TOP SPORT was primarily engaged in the business of selling sporting equipment and accessories.

GARSON and DAVIS incurred expenses for travel and entertainment as part of the ordinary and normal course of their job responsibilities for and on the behalf of the Debtor. These expenses were reported annually in TOP SPORT's tax returns and both GARSON and DAVIS maintained an accounting of their expenses.

Approximately five years prior to the bankruptcy proceeding, TOP SPORT adopted a corporate policy of capping GARSON and DAVIS' reimbursements for monthly expenses at the fixed sum of Four Hundred Dollars ($400.00) per month for travel and entertainment and Two Hundred Twenty-Five Dollars ($225.00) per month for automobile related expenses. These expenses were an ordinary and necessary part of TOP SPORT's business and according to DAVIS and GARSON were reasonable in amount. In addition to GARSON and DAVIS' allotted monthly reimbursement amount they received direct reimbursement for extraordinary business trips or road trips out of town taken on behalf of an in connection with the Debtor's business.

In the year prior to TOP SPORT's bankruptcy, GARSON received Two Thousand Four Hundred Seventy-Five Dollars ($2,475.00) from TOP SPORT at the rate of Two Hundred Twenty-Five Dollars ($225.00) per month for auto expenses, Four Thousand Four Hundred Dollars ($4,400.00) at the rate of Four Hundred Dollars ($400.00) per month for travel and entertainment expenses and Two Thousand Five Hundred Thirty-One Dollars and Forty-Seven Cents ($2,531.47) as reimbursement for extraordinary business trips and DAVIS received Two Thousand Seven Hundred Dollars ($2,700.00) from TOP SPORT at the rate of Two Hundred Twenty-Five Dollars ($225.00) per month for auto expenses, Four Thousand Four Hundred Dollars ($4,400.00) at the rate of Four Hundred Dollars ($400.00) per month for travel and entertainment expenses and Five Hundred Nineteen Dollars and Fifteen Cents

($519.15) as reimbursement for extraordinary business trips.

As part of its corporate compensation package, TOP SPORT reimbursed GARSON and DAVIS for their medical expenses not covered by the medical insurance policy purchased by TOP SPORT for its employees. The program was adopted over five (5) years prior to TOP SPORT's bankruptcy. In the year prior to TOP SPORT's bankruptcy, TOP SPORT reimbursed GARSON for medical expenses in the amount of One Thousand Four Hundred Ninety-Three Dollars ($1,493.00) and reimbursed DAVIS for medical expenses in the amount of Two Thousand Seventy-Five Dollars ($2,075.00).

Approximately six (6) years prior to TOP SPORT's bankruptcy, GARSON and DAVIS each loaned TOP SPORT the sum of Twelve Thousand Five Hundred Dollars ($12,500.00). Both of these loans were reflected on TOP SPORT's books and records and each year TOP SPORT paid interest on the loans to GARSON and DAVIS. The interest payments were reflected annually in TOP SPORT's tax returns.

In May of 1982, GARSON and DAVIS upon the advice of their accountant converted both loans into capital investments in TOP SPORT. To accomplish the redesignation of the funds from loans to capital investments, TOP SPORT issued two checks in the amount of Twelve Thousand Five Hundred Dollars ($12,500.00) one each to GARSON and DAVIS which were endorsed by the Defendants and simultaneously redeposited in TOP SPORT's corporate bank account. Neither GARSON nor DAVIS retained any portion of the repaid funds. In 1982, GARSON and DAVIS each received Six Hundred Twenty-Five Dollars ($625.00) as interest on the loans through May of 1982. Subsequent to the redesignation, no interest was paid by TOP SPORT to either GARSON or DAVIS.

In December of 1975, TOP SPORT established a Profit Sharing and Pension Trust (Plan) for all its employees. Pursuant to the Plan, an annual deposit for each employee equal to approximately ten (10) percent of his or her prior year's salary was made in January of the following year. The last deposits TOP SPORT made in connection with the Plan were in January, 1982 for the calendar year 1981, in excess of one year prior to the filing of the Involuntary Petition. No deposits were made to any employee after that date because in January of 1982, TOP SPORT instituted proceedings to terminate the Plan and petitioned the Internal Revenue Service (IRS) for permission to liquidate the Plan. After receiving notification from the IRS permitting the liquidation, GARSON and DAVIS transferred their fully vested shares of the Plan into Individual Retirement Accounts (IRA's) and the Plan was terminated. Pursuant to § 7.01 of the Plan, upon termination, each participant is fully vested as to his or her share.

In his Amended Complaint, the Trustee alleged that all of the above transactions were both fraudulent and preferential pursuant to 11 U.S.C. § 547 and § 548.

In 1979, TOP SPORT obtained a Two Hundred Fifty Thousand Dollar ($250,-000.00) Small Business Administration (SBA) loan from Southeast Bank (the Bank). The loan was secured by TOP SPORT's inventory, receivables and the proceeds thereof. As additional security, the Bank demanded additional collateral in the form of mortgages on real property owned by GARSON and DAVIS.

By late 1981, early 1982, although TOP SPORT was current with its loan to the Bank, TOP SPORT was experiencing financial difficulties. GARSON and DAVIS consulted with bankruptcy counsel and their major creditors, which included the Bank and their major unsecured creditor Figgie International, Inc. f/k/a A.T.O., Inc., Rawlings Sporting Goods Division (RAWLINGS) and advised all of them of the status of TOP SPORT's financial condition.

After discussing their options with all parties concerned, GARSON and DAVIS opted to accelerate the repayment of the Bank's loan to free up collateral, obtain new financing and operate the business in a scaled-down fashion. It was proposed

that RAWLINGS would have its debt reduced slowly at first to allow the Bank's loan to be satisfied in full and thereafter would be paid in full. All parties concerned, including RAWLINGS, knew of the terms of this proposal and agreed to it.

During the course of 1982, TOP SPORT accelerated its payment of the Bank's loan and in addition reduced RAWLING'S debt by approximately Thirty Thousand Dollars ($30,000.00). During the year prior to bankruptcy, TOP SPORT repaid the Bank approximately One Hundred and Eighty Four Thousand Dollars ($184,000.00) and of that sum, approximately One Hundred Fifty-Three Thousand Dollars ($153,000.00) amounted to funds in excess of the original loan amortization schedule. TOP SPORT's financial records reflect that the Bank's loan was fully secured by TOP SPORT's inventory and receivables throughout the entire year prior to bankruptcy.

## CONCLUSIONS OF LAW

The Court finds that the record lacks sufficient evidence to support the Trustee's allegations that the Defendants were the recipients of either fraudulent or preferential transfers pursuant to 11 U.S.C. § 547 and § 548 and Florida Statute §§ 607.137 and 726.01.

■ Insofar as the payments for travel, entertainment, automobile and medical expenses were concerned, the Trustee failed to establish "actual intent" or for that matter "any intent" on the part of the Defendants "to hinder, delay or defraud" creditors or that TOP SPORT received less than a reasonably equivalent value in exchange for "the transfers". 11 U.S.C. § 548(a)(1), (2). The record does not reflect the dates that the transfers occurred and the Trustee has failed to establish to the satisfaction of this Court that TOP SPORT became "insolvent as a result of (the transfers)". Section 548(a)(1), (2)(B)(i).

■ The payments and reimbursements appear to have been part of a well established, continuous, ordinary and reasonable business practice of TOP SPORT for at least five (5) years prior to the bankruptcy proceeding. TOP SPORT's obligation to pay these expenses was incurred in the ordinary course of its business. The expenses were paid currently, in the ordinary and normal course of its business under ordinary business terms and appear to have been a "substantially contemporaneous exchange" for the services rendered by the Defendants on behalf of the Debtor. As such, these transfers fall within the preference exceptions enumerated in 11 U.S.C. § 547(c)(1) and (2).

■ The Trustee's attempt to recover from both GARSON and DAVIS the Twelve Thousand Five Hundred Dollars ($12,500.00) repaid loans is based upon the incorrect presumption that the Defendants retained the funds. However, the net result of each Defendant having redeposited the loan proceeds back into the Debtor's bank account was that the funds never left the corporation. The transfers were essentially a nullity. Since neither GARSON nor DAVIS retained any of the funds, there is nothing for the estate to recover. There being no transfer to avoid, the Trustee's claim under both 11 U.S.C. § 547 and § 548 must be denied.

■ The Trustee's claim with respect to the estate's recovery of interest payments made to GARSON and DAVIS prior to the "repayment" of the loans is similarly without merit. The evidence reflects that the loans were historically treated as loans on TOP SPORT's books and interest payments were paid annually to GARSON and DAVIS and reflected on the Debtor's books, records and tax returns each year prior to bankruptcy. The payment of interest was therefore an ordinary and legitimate business expense of the Debtor's and the Trustee's claim for avoidance under both 11 U.S.C. § 547 and § 548 must be denied.

■ The Trustee's attempt to set aside as either fraudulent or preferential alleged transfers made by TOP SPORT to GARSON and DAVIS in connection with the Debtor's Pension and Profit Sharing Trust is similarly without merit. The evidence

reflects that no transfers between TOP SPORT and the Defendants occurred within one year prior to bankruptcy. There is no evidence that either Plan was maintained in an improper or fraudulent manner. According to the terms of the Plan, upon termination each participant was fully vested in the amounts deposited on their behalf. There being no transfer to avoid or property to recover on behalf of the estate, the Trustee's claim for the recovery of either a fraudulent or preferential transfer in connection with the Pension Profit Sharing Plans must be denied.

■ Finally, the Trustee argues that the accelerated repayment of the Southeast Bank loan by TOP SPORT constituted a fraudulent or preferential transfer to the benefit of the Defendants. The Court does not agree. According to the evidence, all parties concerned including the major unsecured creditor, RAWLINGS, were aware of the Debtor's financial condition and agreed to the accelerated loan repayment. As both Defendants testified in their affidavits, the repayment of the Bank loan had legitimate business purposes and was intended as the best possible solution for all creditors of TOP SPORT. Although the Trustee has sought to impose liability upon GARSON and DAVIS based on a theory that they indirectly benefited by the repayment of the bank loan due to their having pledged collateral as additional security to the Bank, the evidence reflects that at all times during the accelerated repayment, the Bank was fully secured by inventory and receivables of TOP SPORT.

■ The Trustee has asked this Court to consider Florida Statute § 679.306(4)(d) in its analysis of the loan repayment. The Court finds said section of the Uniform Commercial Code to be irrelevant to the issue at hand. Florida Statute § 679.-306(4)(d) only concerns itself with the extent of a secured creditor's interest in comingled cash proceeds at the time of bankruptcy *only* and counts back ten (10) days prior to the date of filing to reach that determination. The transfers at issue in this cause all took place months prior to bankruptcy and any analysis of the extent of the Bank's security interest would logically have to be made at the time of the transfers. This statute has no retrospective application.

■ The fact that GARSON and DAVIS' exposure as guarantors on the loan was reduced as the loan was paid down is irrelevant and immaterial. In the case at bar, when TOP SPORT repaid the Bank loan, it simultaneously reduced the Bank's security interest in its collateral. Each payment was "accompanied by the release of an equivalent value to the estate". See *In re Herman Cantor Corp.*, 15 B.R. 747 (E.D. Vir., 1981) where the Court found the debtor's payment to the bank to be a preference because the payments were not "accompanied by the release of an equivalent value to the estate". Id. at 749.

In conclusion, the Trustee has failed to demonstrate through the evidence in this cause a right to avoid any of the transfers alleged to be either fraudulent or preferential pursuant to 11 U.S.C. § 547 and § 548 of the Bankruptcy Code. Likewise, although not specifically addressed in the Memorandums of Law submitted by the parties, the Court has considered the allegations contained in Counts X and XI of the Trustee's Amended Complaint (which sought relief under Florida Statutes § 607.-137 and § 726.01) and finds the evidence does not provide a right to relief under either Count.

In essence, the Trustee has attempted to characterize normal everyday business expenses and transactions as fraudulent and preferential when in fact their legitimacy is documented by the history of TOP SPORT's corporate activity. The Court is not convinced that the Defendants either intended to defraud creditors or acted in a fraudulent manner. The Court finds that the Trustee has failed to show a right to relief in this cause as to any of the counts in his Amended Complaint and accordingly judgment shall be entered for the Defendants.

A separate Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.