**In re COASTAL FISHERIES, INC., Debtor.**

**Lewis A. SASSOON, Trustee of Coastal Fisheries, Inc., Plaintiff,**

v.

**INTERNATIONAL MULTIFOODS CORP., et al., Defendant.**

**Bankruptcy No. 84–1083–JG.
Adv. No. A85–254.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 10, 1986.

John S. Rodman, Boston, Mass., for debtor/plaintiff.

Mary E. Clarke, New Bedford, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

This matter came before the Court for a pre-trial conference on the trustee's Complaint to avoid the attachment obtained by International Multifoods Corporation hereinafter ("International" or "the defendant"), pursuant to 11 U.S.C. § 547(b). The parties stipulated to the filing of an agreed statement of facts and accompanying memoranda of law. Based upon a review of the stipulated facts, memoranda of counsel and the applicable law, I find and rule as follows.

The debtor filed a voluntary petition under chapter 11 on August 20, 1984. Subsequent to that time Lewis A. Sassoon was appointed operating trustee of the debtor and continues to act in that capacity. Some two years prior to the chapter 11 filing the debtor and defendant developed a business relationship wherein the defendant sold and the debtor accepted delivery of fish products. The express terms of the sales provided for payment within 30 days of delivery and receipt, although the debtor did not always comply therewith.

On April 23, 1984 the defendant sold and delivered to the debtor fish products upon an agreed price of $35,000 under the usual terms. The debtor failed to make payment of this amount within the thirty day period. At this point of time the debtor owed the defendant a total of $133,823.70. On May 29, 1984 the defendant requested of the appropriate state court, and was granted, a real estate attachment upon the debtor's property in the amount of $133,823.70. The trustee seeks to set aside the attachment as a preferential transfer pursuant to 11 U.S.C. § 547(b).

Since the debtor's bankruptcy petition was filed on August 20, 1984, we are bound by the provisions of the Bankruptcy Reform Act, Pub.L. No. 95–598 (1978); 11 U.C.C.—.

Section 547(b) of the Bankruptcy Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) The transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1978).

The defendant concedes that its attachment would be a preference under § 547(b), which could be set aside by the trustee, except for the exception found in § 547(c)(2), and upon which the defendant solely relies.[1]

---

1. See defendant's Memorandum of Law, page 2.

We therefore need only to examine the provisions of this section and the facts as admitted. Section 547(C)(2) of the Code provides: (c) the trustee may not avoid under this section a transfer—...

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

If we concede, as suggested by the defendant, that an attachment is a transfer, and that the transfer herein was made within forty-five days after the debt was incurred, the defendant is then left to prove that the transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee, and also made according to ordinary business terms.

This is the defendant's defense. It is the defendant's burden to produce the evidence necessary to find in its behalf. Based upon the agreed statement of facts, and the Court emphasizes that these are the only facts before it, there is not a single fact before me which even indicates, let alone by a preponderance of the evidence, that the requirements of § 547(c)(2)(C) & (D), above, are met. This is only some nebulous argument that if payment is not made an attachment would be the ordinary thing to seek.

Let us turn, however, to the questions, what is in the ordinary course of business, and made according to ordinary business terms. The clear intent of § 547(a)(2) is to avoid intrusion upon the normal business relations established as between themselves, by participants in the business community. A trustee in bankruptcy has broad powers. This section is a clear limitation upon his powers, and that limitation must be construed very carefully.

Obtaining an attachment upon a person's real estate for the payment of goods or services is not, ordinarily, in the ordinary course of business. This is not to say that if and when a party fails to pay his bills, a creditor will not seek the attachment, if any property is available to attach. The test is not whether a creditor attempts to collect his just debts in the ordinary course of his business, but whether or not the payment or transfer made (or as in this case, the attachment), is the established ordinary course of business between the parties, and whether the payment or transfer (or as in this case, the attachment) was made according to ordinary business terms.

The specific language and the thrust of the exception created by § 547(c)(2) is to leave undisturbed normal business transactions, conducted in the ordinary course of each parties business, and according to ordinary business terms. The clear congressional intent was to except that which would otherwise chill normal business relations. The Court finds that this transfer does not meet the test necessary to preserve the ordinary course of business exception. Bearing in mind that the evidence is scant, it is reasonable to assume that it was not in the ordinary course of the defendant's business to obtain property attachments, it was a seller of fish products. The obtaining of an attachment cannot possibly be viewed as a payment of a debt made according to ordinary business terms. The ordinary business terms were payment within 30 days of receipt of the goods. It is inconceivable that the terms of an invoice or, alternatively, the agreement of the parties, provided or contemplated that such payment was to be made by the seeking of an involuntary attachment on property of the debtor. The fact that the specific product was sold for $35,000 and yet the attachment sought was for the entire outstanding

balance in excess of $130,000 further bears out that this transaction was not a transfer made according to ordinary business terms.

A brief review of some decisions which have construed the ordinary course of business exception demonstrates that the facts necessary to sustain the exception are not present in the instant case. The Court in *In re Ferguson* 41 B.R. 118 (Bankr.E.D. Va., 1984) closely examined the course of conduct between the parties in holding that the § 547(c)(2) exception was sufficiently established. The Court noted that the defendant sold goods to the debtor on a regular basis and subsequently billed the debtor monthly. Each of the bills were paid within 45 days after receipt. Although the transaction fell somewhat outside the regular course of prior conduct between the parties the Court stated "the mere fact that payments had been made erratically over the course of dealings between the parties was insufficient to take the transaction outside the exception of § 547(c)(2)." *Id.* at 121. The Court in *In re Top Sport Distributors, Inc.,* 41 B.R. 235 (Bankr.S.D. Fla., 1984) relied heavily on the ordinary course of conduct in determining that the questioned transaction was excepted pursuant to § 547(c)(2). In finding that the ordinary course of business exception was present, the fact that the payment and reimbursements appeared to have been part of a well established, continuous, ordinary and reasonable practice between the parties for at least a five year period was at the very heart of the decision.

"In the instant case the attachment was an effort to collect a debt incurred in the ordinary course of business."[2] Although the distinction may seem to be narrow the distinction is succinctly put by defendant's counsel; it is a debt collection effort and not an excepted transfer.

The Court finds for the trustee/plaintiff, and orders the attachment to be vacated.

2. See defendant's Memorandum of Law, page 3.