In re DAMASON CONSTRUCTION
CORP., Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

William J. DAVIS, Wendy M. Davis,
and Kyle M. Davis, Defendants.

Bankruptcy No. 88–417–BKC–3P7.
Adv. No. 88–160.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 26, 1989.

Ronald Bergwerk, Jacksonville, Fla., for plaintiff.

J. Herbert Williams, II, Jacksonville, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the trustee's complaint to avoid the transfer of money and property to insiders pursuant to 11 U.S.C. § 548(a)(2). A trial of this cause was held May 2, 1989, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

On February 29, 1988, Damason Construction Corporation ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 701 *et seq.* Prior to that date, the debtor had engaged in the business of building and selling homes. The defendants were officers, directors and principals of the corporation.

The evidence shows that the debtor had been experiencing financial difficulties since March of 1987. In December 1987, the debtor closed its doors for the Christmas holidays and never reopened for business.

During the few months prior to the petition date, each of the defendants received and cashed a number of checks from the debtor. These payments were as follows:

WILLIAM J. DAVIS

| | |
|---|---|
| 10/07/87 | $1,500.00 |
| 10/16/87 | 1,500.00 |
| 10/29/87 | 1,500.00 |
| 11/13/89 | 1,500.00 |
| 12/18/89 | 1,500.00 |
| TOTAL = | $7,500.00 |

WENDY M. DAVIS

| | |
|---|---|
| 09/18/87 | $ 700.00 |
| 11/30/87 | 500.00 |
| 12/11/87 | 1,000.00 |
| TOTAL = | $2,200.00 |

KYLE M. DAVIS

| | |
|---|---|
| 10/06/87 | $ 800.00 |
| 10/10/87 | 800.00 |
| 10/29/87 | 800.00 |
| 11/13/87 | 800.00 |
| 11/27/87 | 500.00 |
| 12/03/87 | 413.00 |
| 12/12/87 | 500.00 |
| 12/12/87 | 800.00 |
| TOTAL = | $5,413.00 |

These payments were not designated on the corporate books as salary and no taxes were deducted or paid for these items. Although some of the checks contained references to "expenses," the defendants were unable to document any specific corporate expenses which had not already been reimbursed.

When asked about the services they performed for the debtor, the defendants could not describe any specific services rendered to the corporation nor could they ascribe a measure of value to the services allegedly performed. In addition, the testimony is clear that the amounts taken were used solely for the defendants' personal needs as opposed to a corporate purpose.

In addition to the above transfers, the debtor also deeded a parcel of real property in Citrus County to Kyle Davis on December 9, 1987, legally described as:

Lot 34, Block 372 Inverness Highlands West, per Plat Book 5, pp. 19–33, public records of Citrus County, Florida.

No consideration was received for the transfer despite the fact that debtor had originally paid $3,500.00 for the lot. At the time of the transfer, the property was unencumbered and worth $3,500.00.

The defendants testified that the purpose of the transfer of real property was to facilitate the construction of a model home for the corporation. However, the evidence indicates that the property was transferred two weeks prior to the closing of the business and that the debtor failed to received any value for the transfer.

The debtor's schedules reflect that the corporation was highly insolvent on the petition date, February 29, 1988. More specifically, the debtor had unsecured debts of $329,995.00 and assets of $130,-654.00. Moreover, many of the scheduled assets proved to be of nominal value. The Statement of Affairs shows that there were no transfers during the prior year. This was corroborated by Wendy Davis, who testified that there were no significant changes in the corporation's financial posi-

tion within the three months preceding bankruptcy.

## CONCLUSIONS OF LAW

The complaint in this adversary proceeding is predicated upon 11 U.S.C. § 548(a)(2). That section provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

To set aside a transfer under this section, a plaintiff must prove (i) that there was a transfer of an interest of the debtor in property (ii) that the transfer occurred within one year preceding the filing of the bankruptcy petition, (iii) that the debtor received less than a reasonably equivalent value in exchange for this transfer, and (iv) that the debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact. *In re Ear, Nose and Throat Surgeons of Worcester,* 49 B.R. 316 (Bankr.D.Mass. 1985); *Matter of Curina International, Inc.,* 23 B.R. 969, 973 (Bankr.S.D.N.Y. 1982). Proof of actual fraudulent intent is unnecessary. *See, In re Reininger–Bone (Cates–Harman v. Reininger–Bone),* 79 B.R. 53 (Bankr.M.D.Fla.1987); *In re Energy Savings Center, Inc.,* 54 B.R. 100 (Bankr.E.D.Penn.1985).

■ Ordinarily, the burden of proof rests on the trustee to prove each element of a fraudulent transfer. *In re Thames (Campbell v. Thames),* 21 B.R. 704 (Bankr. S.C.1981). Where, however, the defendant has raised an affirmative defense to such action or where the plaintiff has estab-lished a prima facie case, it is incumbent upon the defendant to prove the validity of such defense.

In this case, the defendants have raised two affirmative defenses. First, the defendants suggest that the debtor received reasonably equivalent value in exchange for the transfers in the way of services and payment of corporate expenses, and secondly, that the debtor was solvent when the transfers were made. There is no dispute as to the transfer and receipt of debtor's property within one year prior to the petition date.

The Bankruptcy Code does not define "reasonably equivalent value" and consequently, the term has proven problematic for the bankruptcy courts. 4 *Collier on Bankruptcy* ¶ 548.09 (15th Ed.1986). In the context of payments to insiders, the courts have tended to phrase the inquiry in terms of whether fair consideration or a fair equivalent has been given for a particular transfer. Thus, the determination must be made on a case by case basis. *See, Matter of Nacol (Kleinfeld v. Nacol),* 36 B.R. 566 (Bankr.M.D.Fla.1983) (Paskay, C.J.).

Here, the defendants suggest that they provided personal services to the debtor and/or paid expenses on behalf of the corporation equal to the amount of the transfers. When asked about these services, however, the defendants could not provide specific details about the services provided nor could they produce records of any "expenses" paid on the debtor's behalf.

■ The defendants argue that it was their ordinary business practice to draw "salary" from the debtor corporation as money became available and that the Court should take this in to consideration when making its ruling.[1] The Court does not agree. Section 548(a)(2) speaks in terms of whether the debtor received a reasonable equivalent value in exchange for property transferred. While payments to insiders in the ordinary course of business may have some relevance to a § 547 preference action, it has no bearing on a § 548(a)(2)

---

1. *See, e.g., In re Top Sport Distributors, Inc.,* 41 B.R. 235 (Bankr.S.D.Fla.1984).

fraudulent transfer action. Instead, the focus is limited solely to the value of the property or services given to the debtor in exchange for the transfer.

■ In any event, the transfers do not appear to be part of any well-established, ordinary and re-occurring business practice. If the payments were truly in the nature of salary, there would have been a corresponding entry in the corporation's books and deductions for income taxes as was the case for other salaried employees. Instead, the transfers in question appear to be an attempt by the defendants to deplete the cash reserves of the debtor prior to the bankruptcy. This is not a practice that can be condoned by the Court.

■ As for the transfer of the real property, the Court finds that the debtor failed to receive a reasonable equivalent value in exchange for the transfer. The defendants' explanation that the transfer was made to facilitate the construction of a model home is not credible due to the fact that the debtor ceased doing business two weeks later.

■ The Court will now turn its attention to the solvency issue. Where a debtor is shown to be insolvent at a date subsequent to a particular transfer and the debtor's condition did not change during the interim period, it is logical and permissible to presume that the debtor was insolvent at the time of the transfer. *In re Arrowhead Gardens, Inc. (Foley v. Briden)*, 32 B.R. 296 (Bankr.D.Mass.1983), *aff'd* 776 F.2d 379 (1st Cir.1983).

■ In this case, there is little doubt that the debtor was insolvent on the petition date. The bankruptcy schedules reveal that the debtor had unsecured debts of $329,995.00 and assets of only $130,654.00. The Statement of Affairs indicates that there were no transfers during the prior year and there was testimony to the effect that no significant changes in the debtor's financial condition occurred within the preceding three months. Although more concrete evidence of insolvency would be helpful, it is logical to infer that the debtor was insolvent when the transfers to the defendants were made.

Having considered the totality of the evidence the Court finds (i) there was a transfer of an interest of the debtor in property (ii) within one year of the filing of the bankruptcy petition (iii) in which the debtor received less than a reasonably equivalent value in exchange for the transfers (iv) which was made while the debtor was insolvent. Accordingly, the transfers to the defendants are avoidable under § 548(a)(2) of the Bankruptcy Code, and each defendant remains individually liable for the amount of money and property received by him or her personally.

A separate Final Judgment will be entered in accordance with these findings.

## FINAL JUDGMENT

Upon Findings of Fact and Conclusions of Law separately entered, it is ORDERED as follows:

1. Final Judgment is entered in favor of plaintiff, Charles W. Grant, Trustee, and against defendant William J. Davis in the amount of $7,500.00, for which sum let execution issue.

2. Final Judgment is entered in favor of plaintiff, Charles W. Grant, Trustee, and against defendant Wendy M. Davis in the amount of $2,200.00, for which sum let execution issue.

3. Final Judgment is entered in favor of plaintiff, Charles W. Grant, Trustee, and against defendant Kyle M. Davis in the amount of $8,913.00, for which sum let execution issue.