**In re ROYAL COACH COUNTRY, INC., Debtor.**

**Lawrence S. KLEINFELD, Trustee of the Estate of Royal Coach Country, Inc., Plaintiff,**

**v.**

**James Albert DONOVAN, Helen Donovan, Barnett Bank of Citrus County, N.A., and First Florida Bank, N.A., Defendant.**

Bankruptcy No. 90–0326–8P7.
Adv. No. 90–069.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 21, 1991.

Dennis J. LeVine, Tampa, Fla., for plaintiff.

Roberta A. Colton, for Barnett Bank of Citrus County.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case, and the matter under consideration is a Complaint filed by the Trustee, Lawrence S. Kleinfeld (Trustee), naming James Albert Donovan (Al Donovan), his ex-wife, Helen Donovan (Helen Donovan), Barnett Bank of Citrus County, N.A. (Barnett), and First Florida Bank, N.A. (First Florida) as Defendants. The Trustee in his Complaint seeks injunctive relief and also seeks to recover pursuant to 11 U.S.C. § 548 transfers claimed to have been fraudulent made by Royal Coach Country, Inc. (Debtor). Based on 11 U.S.C. § 549, the Trustee in his Complaint also seeks to recover certain postpetition payments made by the Debtor.

The Complaint originally set forth several claims in five separate Counts. The Trustee in his Amended Complaint added Counts VI, VII, and III [sic]. The Trustee again amended his Complaint and added Counts VIII, IX and X.

On April 13, 1990, the Trustee filed a Notice of Voluntary Dismissal without prejudice of his claims asserted against First Florida, thus eliminating Count V of the Complaint. On November 6, 1990, this Court entered an Order and approved the Trustee's Motion To Compromise his claim against Barnett. On November 16 and December 11, 1990, this Court entered Orders and dismissed Counts VIII, IX and X of the Complaint. Although no order dismissing Count VI has been entered, as part of the Trustee's compromise with Barnett, the Trustee agreed to release all claims against Barnett; thus, Count VI is now moot. The remaining counts under consideration are Counts I, II, III, IV, VII, and III [sic], all of which seek relief only against Al and Helen Donovan, the remaining Defendants.

In Count I, the Trustee alleges that Al and Helen Donovan have possession of property of the estate consisting of a 1984 one-ton pickup truck, a ¾-ton pickup truck, a Park Model Trailer, 3 travel trailers, 1 motor home, a Kar Donkey, a Pop-up Camper, and various other items of inventory for use with recreational vehicles and seeks an order from this Court directing the Donovans to turn this property over to the Trustee pursuant to 11 U.S.C. § 542.

In Count II of the Complaint, the Trustee alleges that Al and Helen Donovan obtained the property described above from the Debtor within one year of the date of the commencement of the case while the Debtor was insolvent, and that the transfers were made for less than reasonably equivalent value, or, in the alternative, that

the assets were transferred with the actual intent to hinder and defraud the Debtor's creditors. Based on these, the Trustee contends that the transfers were fraudulent and may be avoided pursuant to 11 U.S.C. §§ 548 and 550.

Count III is based on 11 U.S.C. §§ 549 and 550 and alleges that the Debtor transferred $20,847.70 to Helen Donovan post-petition, that this transfer was unauthorized by this Court or the Bankruptcy Code and therefore may be recovered by the Trustee.

In Count IV, the Trustee seeks an injunction prohibiting Al and Helen Donovan from disposing of property of the Debtor claimed to be in their possession. It should be noted that on March 7, 1990, this Court entered an Order which, among other things, enjoined Al and Helen Donovan from selling, transferring, encumbering, or otherwise disposing of any property of the Debtor described in Count IV of the Complaint.

The claim in Count VII of the Complaint is based on 11 U.S.C. §§ 548 and 550 and alleges that the Debtor paid $9,247.25 to or on behalf of Al Donovan within one year of the filing of this case, while the Debtor was insolvent and for less than reasonably equivalent value, or, in the alternative, with intent to hinder and delay creditors. Based on these facts, the Trustee contends the transfers described in Count VII of the Complaint are avoidable by the Trustee as fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550.

Count III [sic] is also based on 11 U.S.C. §§ 548 and 550 and alleges that Helen Donovan transferred the title to a 1981 Mercury Marquis owned by her to the Debtor in exchange for a 1984 Ford one-ton pickup truck owned by the Debtor. According to the Trustee, this transfer occurred within one year prior to the filing of this case, while the Debtor was insolvent and that the Debtor received less than a reasonably equivalent value for this transfer. In the alternative, the Trustee contends that the Debtor made this transfer with the actual intent to hinder, delay or defraud creditors and, therefore, the transfer constitutes a fraudulent conveyance pursuant to § 548.

On February 26, 1990, Al Donovan filed a submission which appears to be an answer addressing Counts I—IV of the Complaint. This submission does not specifically address each allegation of the Complaint, but appears to set forth Mr. Donovan's view of certain facts regarding this controversy. On April 4, 1990, the Clerk of the Court entered a default against Helen Donovan regarding Counts I—IV of the Complaint. Thus, it is appropriate to enter a final judgment by default in favor of the Trustee and against Helen Donovan regarding the claims set forth in these Counts. On May 22, 1990, Al and Helen Donovan filed an Answer to Counts VI, VII and III [sic]. It should be noted that in Count VI the Trustee does not seek relief against Al or Helen Donovan.

The facts which are relevant to the resolution of the remaining counts of the Complaint described above as established at the final evidentiary hearing are as follows:

The Debtor is a Florida corporation, and at the time relevant, was operating a business selling recreational vehicles on a retail level. The officers of the Debtor corporation were Joan Crutchfield, acting as president, and Al Donovan, as vice-president, secretary and treasurer. Al Donovan was also employed as sales manager by the Debtor and was the owner of 45% of the outstanding shares of the Debtor. Helen Donovan was employed by the Debtor as a bookkeeper. The record reveals that Al Donovan received a salary of $550.00 per week and Helen Donovan received a salary of $250.00 per week. (Exhs. 1 and 2).

In addition to checks received for their salaries, Al and Helen Donovan also received several checks drawn on the checking accounts of the Debtor. These checks are as follows:

1) On October 13, 1989, Al Donovan, as vice-president, signed a check in the amount of $1,000.00, made payable to Al Donovan drawn on an account maintained by the Debtor with Barnett. (Exh. 3). The legend on the check states "reim." [sic]. According to Al Donovan, this check repre-

sented a partial repayment of a loan he had previously made to the Debtor. There is nothing to document this so-called loan and the Debtor's records fail to furnish any information concerning this so-called loan made by Al Donovan to the Debtor for which Donovan would have been entitled to receive a repayment.

2) On November 6, 1989, Al Donovan, as vice-president, and Joan Crutchfield, as president, signed a check in the amount of $7,000.00 payable to Helen Donovan and drawn on the same account. (Exh. No. 6). The authorization granted by the Debtor to open the checking account required two signatures for any check drawn on the account for more than $1,000.00. Ms. Crutchfield denied having signed this check, and she testified that she never authorized this payment to Mrs. Donovan. The legend on the check states "purchase R.V." According to Helen Donovan, this check represented a payoff on vehicles the Debtor sold on consignment. Helen Donovan further contends that the party who was to receive the payoff would not accept payment by way of a check from the Debtor's own account, but required a cashier's check. As a result, Helen Donovan claims that she cashed the $7,000.00 check and then purchased a cashier's check made payable to the customer. It should be noted that a copy of the cashier's check was not introduced into evidence.

3) On January 8, 1990, Helen Donovan and Al Donovan signed a check in the amount of $20,847.70 made payable to Helen Donovan and drawn on the Royal Coach Country RV Sales, Inc. Service Department Account also maintained at Barnett. (Exh. 8). The legend on this check states "Payoff—Pace Arrow". On January 12, 1990, the Debtor filed its voluntary Petition for Relief, and on January 17, 1990, Helen Donovan deposited this check in a personal account maintained by her at First Florida. Although the check was initially returned as unpaid for insufficient funds, on January 18, 1990, Barnett issued a cashier's check in the same amount. This check was purchased by the Debtor and made payable to Helen Donovan. (Exh. 9).

Helen Donovan claims that $17,790.00 of this amount was used to purchase a cashier's check to pay Sunshine RV in Hudson, Florida, amounts owed to it for a unit which was placed on consignment with the Debtor. (Exh. 13). To explain the disposition of the remaining $3,057.70, Helen Donovan explained that she wrote checks from her own personal account to Harry Robin in the amount of $301.00; to John Mereer in the amount of $145.00; to "Marilla" in the amount of $365.75; and to Rich Bergman in the amount of $222.78 to cover the Debtor's payroll. In addition, Helen Donovan deposited $1,500.00 of this amount in her account at Sun Bank. (Exhs. 11 and 12). It is Helen Donovan's contention that the $1,500.00 represented partial repayment of a "loan" made by her to the Debtor. There is no evidence of this alleged loan in the records of the Debtor, neither does she have any documentary proof of this alleged loan. Nor is there any evidence in this record regarding the disposition of the remaining $623.17.

In addition to the checks listed above, Helen Donovan also endorsed a check dated October 30, 1989, made payable to cash, in the amount of $1,247.25, drawn on the account of Royal Coach Country R.V. Sales, Inc. (Exh. 4). This check appears to have been signed by both Al Donovan and Joan Crutchfield, but again, Ms. Crutchfield contends that the signature appearing on the check is not hers. The record reveals, and it is undisputed, that these funds were used on October 30, 1989, to pay medical bills incurred by Al Donovan at HCA Bayonet Point/Hudson Medical Center totalling $1,247.75. (Exh. 5). The record reveals that these charges were for treatment of bleeding ulcers which were allegedly caused by Al Donovan's job. (Exh. No. 10, p. 48). Helen Donovan also contends that the Debtor had agreed to pay its employees for medical bills based on injuries incurred at work, although this is disputed by Joan Crutchfield. It is without dispute that the Debtor was never reimbursed by Al and Helen Donovan for this check or for any of the other checks discussed above.

As noted earlier, in March of 1989, the Debtor transferred the title to a 1984 Ford Pickup Truck to Helen Donovan and in exchange, Helen Donovan transferred her title to a 1981 Mercury Marquis to the Debtor. Evidence established at the final hearing reveals that in April 1990, the Mercury Marquis had a maximum value of $500.00, while the Ford Pickup Truck had an approximate value of $2,800.00.

The record also reveals that shortly before the filing of this case, Al Donovan removed assets of the Debtor from the Debtor's business office, and these assets are presently in the possession of Al or Helen Donovan. (Exh. No. 10). These assets include the pop-up camper, a 1984 Sunset Park model RV, a 3,000 pound press, 2 welding tanks, 1 Kar Donkey, 1 PC–10 computer, 1 Xerox copier, 2 air conditioners, some office equipment and supplies, a 1958 motor home, a 3/4-ton truck, 9 propane bottles, 2 generators, a water purifier, an electric sign and a water cooler. (Exh. No. 10). As stated by Al Donovan, he moved these assets because he was "afraid that the Internal Revenue Service was going to lock the lot down and we couldn't do business." (Exh. No. 10, p. 34). Al Donovan sold some of these items for $400.00. (Exh. No. 10, p. 41).

Before discussing whether the transfers discussed above are fraudulent, or were unauthorized postpetition transfers, it should be noted that on the date of the commencement of this case, the Debtor's Schedules reveal assets totalling approximately $20,500.00, with debts totalling $126,786.08. Thus, as of January 12, 1990, the date this case was commenced, based on the schedules, the Debtor was clearly insolvent. The record as established by the testimony of Joan Crutchfield supports the conclusion that the financial condition of the Debtor was no different when the transfers described above occurred. In fact, Al and Helen Donovan concede they became aware the Debtor was insolvent as early as May and September 1989, respectively.

Based on these facts, it is the contention of the Trustee that Helen and Al Donovan should be ordered to turn over the property of the estate in their possession, that their removal of these assets from the Debtor and the Debtor's transfer of the Ford to Helen Donovan constitute avoidable fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550, that the check negotiated by Helen Donovan postpetition constitutes an unauthorized postpetition transfer which may be avoided by virtue of 11 U.S.C. §§ 549 and 550, and that the $7,000.00, $1,000.00, and $1,247.75 checks drawn on the Debtor's accounts to or on account of Al Donovan and/or Helen Donovan are fraudulent conveyances and are avoidable pursuant to 11 U.S.C. §§ 548 and 550.

Regarding the assets which are the subject of Count I, the Defendants concede that they have in their possession property of the estate. Thus, this Court is satisfied that those assets should be turned over to the Trustee immediately pursuant to 11 U.S.C. § 542. Thus, the Trustee is entitled to a judgment in his favor on Count I. In light of the foregoing, this Court is satisfied that upon the turnover of these assets, Count IV of the Complaint which seeks injunctive relief will be moot.

Regarding the Trustee's allegations that the transfers described above were fraudulent, § 548(a) governs and provides in pertinent part:

**§ 548. Fraudulent transfers and obligations**

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted, or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

■ Thus, if a transfer is made to place property of the debtor beyond the reach of its creditors or if the Debtor receives less than reasonably equivalent value for the transfer while the debtor is insolvent, that transfer may be avoided by the trustee. *In re Sperry*, 101 B.R. 763 (Bkrtcy.M.D.Fla. 1989). Fraudulent transfers are avoidable because they diminish the assets of the debtor to the detriment of all creditors. *In re Chase & Sanborn Corp.*, 813 F.2d 1177 (11th Cir.1987).

There is no question that the Debtor was insolvent at the time the transfers under consideration were made and that the transfers occurred within one year before the date of the filing of the Debtor's involuntary Petition. Regarding the Debtor's assets which are the subject of Count II, there is absolutely no evidence that the Debtor received anything in exchange, thus, the transfers were obviously for less than reasonably equivalent value. Further, this record supports the conclusion that the assets were transferred to prevent the IRS from seizing the Debtor's assets. As the Donovans' taking the assets operated to deplete the assets of the estate, these transfers were fraudulent and the Trustee is entitled to the entry of a Final Judgment in his favor as to Count II.

■ As to the Trustee's allegations that the checks drawn against the Debtor's checking accounts in the amounts of $7,000.00 payable to Helen Donovan, $1,247.25 payable to "cash", and $1,000.00 payable to Al Donovan constitute fraudulent conveyances, this Court is satisfied that Final Judgment should also be entered in favor of the Trustee. As noted previously, the checks were written and negotiated within one year of the filing of this case and when the Debtor was insolvent. While there is no evidence that these transfers were made with an actual intent to hinder, delay, or defraud creditors, the Debtor did not receive anything, let alone a reasonably equivalent value in exchange. In reaching

this conclusion, this Court rejects Helen Donovan's explanation that the proceeds of the $7,000.00 check were used to pay off a vehicle the Debtor sold on consignment, in light of her failure to substantiate her contentions in any way. For the same reason, this Court rejects Al Donovan's claim that the $1,000.00 check made payable to him was partial satisfaction of a loan made by him to the Debtor. Finally, regarding the check in the amount of $1,247.75 made payable to "cash", it appears that this check was used for nothing more than paying Al Donovan's personal expenses for which the Debtor received nothing in return.

■ Regarding Count III [sic], there is no evidence to support the Trustee's contention that the exchange of the 1981 Mercury Marquis valued at $500.00 for the 1984 Ford pickup truck valued at $2,800.00 was made with actual intent to hinder, delay or defraud creditors. However, it is again undisputed that the exchange occurred while the Debtor was insolvent and within one year of the filing of this case. Thus, the question remains whether the Mercury Marquis had a reasonably equivalent value compared to the Ford pickup truck.

■ It should be noted that the Bankruptcy Code does not define "reasonably equivalent value", and there is no precise formula to be used to determine a reasonably equivalent value. *In re Damason Const. Corp.*, 101 B.R. 775 (Bkrtcy.M.D. Fla.1989). In making this determination, the Court must consider all facts and circumstances surrounding the transfer. *See In re Join-In Intern., Ltd.*, 56 B.R. 555 (Bkrtcy.S.D.N.Y.1986); *In re Nacol*, 36 B.R. 566 (Bkrtcy.M.D.Fla.1983).

■ This Court is of the opinion that reasonably equivalent value in this instance should be determined based on what the Debtor would receive as a fair exchange in the used-car market. *See In re Ozark Restaurant Equip. Co., Inc.*, 850 F.2d 342 (8th Cir.1988). As the Debtor traded a Ford valued at $2,800.00 for a Mercury valued at $500.00, a vehicle of less than one

fifth the value of the Ford, this Court is satisfied that the Debtor received grossly inadequate consideration for the exchange. Based on the standard set forth above, this Court is satisfied that the Trustee is entitled to a Final Judgment in his favor regarding Count III [sic].

■ This leaves for consideration the claim set forth in Count III of the Complaint in which the Trustee seeks to avoid the transfer of the sum of $20,847.70 to Helen Donovan postpetition pursuant to 11 U.S.C. § 549. This section provides that the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized under the Bankruptcy Code or by the Court. First, there is no question that the funds in question were property of the estate, that the check was negotiated postpetition, and that the payment was not authorized by the Bankruptcy Code or by the Court. While this Court is persuaded that these funds, with the exception of approximately $2,000.00 were used to satisfy obligations of the Debtor, pursuant to 11 U.S.C. § 550, the Trustee is nevertheless entitled to recover these funds from Helen Donovan, the initial transferee of the funds. In any event, even if this were not the case, a default has been entered against Helen Donovan regarding this Count and no motion to set aside the default was ever filed.

In accordance with the foregoing, this Court is satisfied that the Trustee is entitled to the entry of a final judgment in his favor regarding Counts I, II, III, VII and III [sic].

A separate Final Judgment will be entered in accordance with the foregoing.