**In re APEX INTERNATIONAL MANAGEMENT SERVICES, INC., Debtor.**

**Charles W. GRANT, Trustee, Plaintiff,**

**v.**

**Robert G. MURRELL and Mercerdees Murrell, Defendants.**

**Bankruptcy No. 89–652–BKC–3P7.**

**Adv. No. 91–1277.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 28, 1992.

**648**

Ronald Bergwerk, Jacksonville, FL, for plaintiff.

James R. Spence, Sam E. Murrell, Orlando, FL, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Plaintiff, Charles W. Grant, as trustee of the estate of Apex International Management Services, Inc., filed complaint against defendants, Robert G. and Mercerdees Murrell, seeking to avoid a transfer under 11 U.S.C. § 548(a)(2). A trial was held on July 29, 1992, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

On October 28, 1988, debtor issued a check for $13,809.96 to each of the defendants. The checks both carried the notation "bond."

Debtor filed a chapter 11 petition on March 14, 1989. The case was converted to chapter 7 on April 13, 1990, and plaintiff was appointed trustee.

Defendants contend that the checks were issued in payment for their acting as surety on bonds for government contracts obtained by the debtor. In addition, the defendants maintain that the bonds were a prerequisite to debtor acquiring such contracts.

Plaintiff introduced into evidence sworn affidavits made by defendants in a prior adversary proceeding (adversary number 91–38). The affidavits indicate that neither defendant ever intended to act as surety of any bond for the debtor. In fact, defendant Robert G. Murrell's affidavit states:

4. At a later date blank bond forms and blank forms for Affidavit of Individual Surety were received, but I never mailed or returned them, and never authorized their return or use and would not have returned them or permitted their use unless I had first received a properly signed and executed indemnity agreement as agreed, and also first approved the completed bond form before being used or submitted to the contracting authority. If any blank forms were ever signed by me, they were kept by me in my law office in a secure and safe place, and never released by me or returned by me to Fred E. Johns or Apex International Management Services, Inc., nor did I authorize anyone to use any such forms which may have contained my signature as surety.

. . . . .

11. The use of any forms or bond purporting to show the signature of the Affiant as a surety for Apex International Management Services, Inc. was unautho-

rized and without the knowledge or consent of the Affiant, and if signed by Affiant, obtained by fraud and misrepresentation relied upon by Affiant to his detriment, such unauthorized use being the result of wrongful conduct of others, without the participation of [sic] knowledge of the Affiant.

Defendant Mercerdees Murrell affidavit differs only in that she admits that she signed the bond forms in blank. However, she states that Mr. Johns, debtor's president, agreed that the forms would not be used until she had seen a copy of them filled in and until an indemnity agreement was signed. Neither condition was satisfied and defendant Mercerdees Murrell stated that she never authorized the use of the signed bond forms.

Plaintiff also entered into evidence debtor's financial statement dated October 31, 1988, showing approximately 5 million dollars in assets, 4.4 million dollars in liabilities, and a positive stockholder equity of $665,000.00. The largest assets were the accounts receivables and the inventory.

Plaintiff argues that the accounts receivable are overstated because no offset has been made for disputed or uncollectible accounts and because contingent claims are included. In addition, plaintiff asserts that the entry showing approximately $581,000 in unpaid payroll taxes indicates that the debtor was not paying its bills as they became due. Finally, plaintiff maintains that the balance sheet shows that debtor was undercapitalized at the time the checks were issued.

Debtor's president testified at trial that he did not recognize the October 31, 1988, financial statement produced by the plaintiff. He also stated that the figures contained in the statement were not accurate.

The evidence presented establishes that at the time of the transfer a federal government agency reviewed the contract for which the bonds were to be issued and determined that the debtor had adequate financial resources to perform. Subsequent to the issuance of the checks, debtor obtained other contracts and several bank loans.

The sole issue before the Court is whether the issuance of the two checks constituted a transfer of debtor's property that is avoidable by the plaintiff pursuant to 11 U.S.C. § 548.

### CONCLUSIONS OF LAW

Section 548 provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

In fraudulent conveyance actions, the trustee has the burden of proof on all issues. *In re Rodriguez*, 895 F.2d 725, 726 n. 1 (11th Cir.1990); *In re Vurchio*, 107 B.R. 363, 364 (Bankr.M.D.Fla.1989) (citing *In re Damason Construction Corp.*, 101 B.R. 775, 777 (Bankr.M.D.Fla.1989)).

In order to successfully prosecute a claim under § 548(a)(2), the trustee must prove the following:

1) that there was a transfer of an interest of the debtor in property,

2) that the transfer occurred within one year preceding the filing of the bankruptcy petition,

3) that the debtor received less than a reasonably equivalent value in exchange for this transfer, and

4) that the debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact.

*In re Damason Construction Corp.*, 101 B.R. 775, 777 (Bankr.M.D.Fla.1989); *In re Ear, Nose and Throat Surgeons, Inc.*, 49 B.R. 316 (Bankr.Mass.1985).

The evidence is clear that a transfer of the debtor's property was made within one year of the filing of the bankruptcy. The checks were made on debtor's account and dated October 28, 1988, less than 6 months prior to the filing of the chapter 11 petition. The plaintiff has proven the first two elements.

Next, the plaintiff has the burden of showing that the debtor did not receive a reasonably equivalent value for the funds paid to the defendants. The affidavits demonstrate that neither defendant authorized the debtor to utilize them as a surety on the bonds. The defendants, thus, claimed that they were not sureties on any bonds for the debtor. Not having performed as a surety, the defendants provided no value to the debtor in return for the monies paid. The plaintiff has met the burden on the third element.

The final factor under § 548(a)(2) concerns the solvency of the debtor at the time of the transfer. The debtor's financial statement dated three days after the transaction indicated assets of over 5 million dollars and liabilities of 4.4 million dollars. Thus on the face of the document, the debtors appeared to be solvent.

However, plaintiff urges the Court to look deeper into the entries and make any assessment as to the viability of collecting portions of the accounts receivable. The Court has the power to make such assessments and some evidence was presented as to the lack of value of certain claims receivables. On the other hand, the evidence established that the federal government determined that the debtor was financially able to perform the contract at issue. Debtor also obtained other contracts and bank loans after the payments to defendants. Finally, the bankruptcy case was not filed until nearly five months after the transaction and the case was not converted to chapter 7 until over a year after that.

The evidence as whole indicates that debtor was solvent when the checks were issued, that the payment did not render it insolvent, and that it was not left with unreasonably small capital. In addition, the proof fails to establish that the debtor intended to or believed that it would incur debts beyond its ability to pay. Consequently, the plaintiff has failed to met the burden on the final element under § 548(a)(2).

## CONCLUSION

Having proven that the issuance of the checks was a transfer of debtor's interest in property made within one year of filing bankruptcy for less than a reasonably equivalent value, plaintiff satisfied three of the elements of § 548(a)(2). However, plaintiff failed to establish that the debtor was insolvent or became insolvent as a result of the transfer and, therefore, cannot prevail.

A separate Judgment in favor of the defendants will be entered.