**In re ROYAL CROWN BOTTLERS OF NORTH ALABAMA, INC., Debtor.**

**Milton G. GARRETT, as Trustee of the Royal Crown Bottlers of North Alabama, Inc., Plaintiff,**

**v.**

**Freddie M. FALKNER, Defendant.**

**Bankruptcy No. 80–02431.**
**Adv. No. 81–0765.**

United States Bankruptcy Court,
N. D. Alabama.

Aug. 10, 1982.

Milton G. Garrett, Birmingham, Ala., as trustee.

Robert W. Hanson, Albertville, Ala., for defendant.

## INTRODUCTION, FINDINGS OF FACT, CONCLUSION AND ORDER

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

This is a case begun by a voluntary petition filed on May 7, 1980, under Chapter 7, Title 11, United States Code, and the case continues to be pending before the court under said chapter. The above-styled adversary proceeding was commenced by the trustee of the bankrupt estate in an effort to recover the proceeds of $35,000 from a bank check in that amount which was issued by the debtor to the defendant. The trustee alleged that this was a transfer for

"less than a reasonably equivalent value," that it was made "within one year next preceding the filing of the bankruptcy petition herein," and that it was made at a time when the debtor was insolvent or that the debtor was rendered insolvent by the transfer. There were other allegations not necessary to a recovery by the trustee or which constitute alternate claims not supported by any substantial evidence. The debtor responded to the complaint with a general denial. This proceeding was tried before the court, without intervention of a jury, and the proceeding has been submitted to the court for entry of a judgment. A judgment in favor of the defendant, dismissing the complaint and this proceeding will be entered.

### Findings of Fact

From the pleadings and proof, the bankruptcy judge finds the following facts:

1. In early December, 1979, Royal Crown Bottling Company of Boaz, Inc. (hereinafter referred to as R–C Boaz) was experiencing financial difficulties and had sought financial help from Royal Crown Cola Company in Chicago. Such help was promised on the condition that R–C Boaz effect a reorganization and a change in management. The condition was met and substantial financial aid was given, but that did not prevent the bankruptcy of R–C Boaz, which occurred on the same day as that of the debtor.

2. The reorganization and change in management included the following: (a) Lynn F. Hoffman became president, replacing William D. Hildebrand, who became vice president and treasurer, and Michael Little was elected assistant secretary-treasurer; (b) The defendant sold to R–C Boaz his capital stock in that corporation, being 450 shares, and any interest which he might have in capital stock of KA, Inc., cancelled a contract (dated April 3, 1978) which called for defendant to be employed by KA, Inc., as its operations manager and vice president, from May 1, 1978, to April 30, 1983, at an annual salary of $25,000, and released R–C Boaz from any liability to pay his salary, which had increased to $30,000. By some arrangement under this employment contract, defendant's principal duties were as operations manager of R–C Boaz, of which he also was a director and vice president. He relinquished all of these positions.

3. The purchase price of defendant's stock was fixed at $115,200, with $35,000 to be paid by R–C Boaz at the closing of the transaction and with the balance to be evidenced by a promissory note for $80,200.

4. The agreement between defendant and R–C Boaz was embodied in a written contract executed by them on January 23, 1980. Among other things, this agreement gave R–C Boaz an option to purchase a certain piece of real estate from defendant and agreed to hold defendant harmless from debts owed by it, the debtor, KA, Inc., Royal Crown Bottlers of Gadsden, Inc., and Royal Crown Bottlers of Cullman, Inc.

5. The debtor, KA, Inc., and Royal Crown Bottlers of Gadsden, Inc., apparently were wholly-owned subsidiaries of R–C Boaz, which also had at least some investment in Royal Crown Bottling Company of Cullman, Inc., and all were corporations.

6. R–C Boaz was a bottler of soft drinks under an arrangement with Royal Crown Cola Company, and the debtor maintained a warehouse for such drinks at Birmingham, Alabama, and distributed them to retail vendors. The funds and bookkeeping records of parent corporation and this subsidiary corporation were *intermingled.*

7. The debtor issued its bank check in the sum of $35,000, dated January 21 [?], 1980, to the defendant, who collected the proceeds of the check in that sum. This check was issued by the debtor to pay the downpayment by R–C Boaz for its purchase of its own stock from the defendant, as part of the agreement dated January 23, 1980. On May 7, 1980, the debtor filed its bankruptcy case, and it is this $35,000 which the trustee in bankruptcy seeks to recover from the defendant.

8. At the time of issuance of this check and at all times subsequent, the debtor and R–C Boaz were insolvent.

### Conclusions By the Court

The trustee recited in his complaint that recovery of the $35,000 was sought under the provisions of 11 U.S.C. § 548, which is titled "Fraudulent transfers . . . ." Along with other provisions, this section permits a trustee to recover a transfer (within one year of bankruptcy) of property by an insolvent debtor, if made for "less than a reasonably equivalent value." The trustee urges the obvious point here that the debtor paid the defendant $35,000 on an obligation owed by a separate corporation (R–C Boaz) for the latter's purchase of its own stock from the defendant. From this premise, the trustee concludes that all the consideration from the defendant in this transaction (the stock, the removal of the defendant from the ownership and management of R–C Boaz and the management of KA, Inc., the land-purchase option) passed to R–C Boaz, none passed to the debtor, and, therefore, the transfer of the $35,000 by the debtor to the defendant could not have been for a "reasonably equivalent value," received by the debtor.

■ This conclusion omits any consideration of the fact that to some extent these two corporations shared an "identity of interests"[1] and ignores its effect upon the matter before the court. It may be said that, as a general rule, an insolvent debtor receives "less than a reasonably equivalent value" where it transfers its property in exchange for a consideration which passes to a third party. In such case, it ordinarily receives little or no value.

■ A clear distinction from this rule exists, however, if the debtor and the third party are so related or situated that they share an "identity of interests," because what benefits one will, in such case, benefit the other to some degree.[2] The ultimate question then becomes one of determining the value of this vicarious benefit and testing it by the measure of "reasonably equivalent" for the property transferred by the insolvent debtor.

■ When the consideration for a transfer passes to the parent corporation of a debtor-subsidiary making the transfer, as in the case here, the benefit to the debtor may be presumed to be nominal, in the absence of proof of a specific benefit to it. On the other hand, the passing to a subsidiary of the consideration for a transfer by a debtor-parent may be presumed to be substantial, because the subsidiary corporation is an asset of the parent corporation, and what benefits the asset will ordinarily accrue to the benefit of its owner.

■ In the present case, the removal of the defendant from the ownership and management of R–C Boaz brought to both it and the debtor substantial financial aid from the franchisor, Royal Crown Cola Co., even though the financial blood transfusion was shortly to prove futile. There was no evidence of how much aid was given to the debtor, except "substantial." It is unlikely that financial aid was available to either the debtor or R–C Boaz (both being insolvent) from any other source; so, whatever financial aid went to either was of considerable benefit to it, in contrast to the value of a loan of money to a financially sound corporation. In addition, R–C Boaz appears to have been the bottler of the soft drinks and the debtor to have been the distributor of at least a substantial part of the bottled drinks. Thus, the evidence supports a conclusion of a special and significant financial benefit to the debtor from financial aid to its insolvent parent, R–C Boaz, in contrast to the presumption that a consideration passing to a parent corporation is usually of nominal benefit to its subsidiary corporation.

1. See 9A Am.Jur.2d *Bankruptcy* § 564, at 193 (1980).

2. *Id. See, Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979 (2d Cir. 1981); *In the Matter of Winslow Plumbing, Heating and Contracting Co.,* 424 F.Supp. 910 (D.Ct.1976).

In the present case, however, the court cannot determine the question of whether the consideration passing to the debtor was of "less than a reasonably equivalent value" in relation to the $35,000 paid out by the debtor. The lack of proof of the amount of financial aid given to the debtor and to R–C Boaz, upon the departure of the defendant, and of how it affected the operations of each corporation, leaves a void in the evidence.

Was it the responsibility of the trustee, having the general burden of proof or of ultimate persuasion (as the moving party) to supply this evidence; or, having proved that the primary elements of the consideration passed to a third party, for the debtor's transfer of its property, did the burden of going forward with the evidence shift to the defendant who received the $35,000 from an insolvent debtor? The United States Court of Appeals for the Second Circuit seems to have said that the trustee retains the burden of proving the value of this benefit to the debtor, to the extent of showing that it was "less than" a reasonably equivalent value for the property transferred.[3]

Whoever has the burden of establishing the value or lack of value received by the debtor in exchange for the transfer may ordinarily be faced with a task fatal to that party's case. It usually will be the task of establishing the value or lack of value of an intangible benefit—a difficult assignment. Perhaps this particular burden should not be upon the trustee, once it has been established that the direct consideration for the debtor's transfer did not go to it, but to a third party. It is not unreasonable to find that the insolvent debtor's transferee should have the burden of demonstrating that the debtor's estate was not harmed by the transfer of the insolvent debtor's property to the transferee, even though all or substantially all of the primary consideration for the transfer went—not to the debtor—but to another party.

Rather than for this court to undertake to establish the latter rule, it appears that this case should be decided against the trustee's contention on a different evidentiary factor of a more fundamental nature. The statute provides, if its conditions are met, that the trustee "may avoid any transfer of an interest of the debtor in property." Because the funds of the debtor and of R–C Boaz were commingled and their records were not separately maintained, it was necessary to a recovery by the trustee that evidence be presented to the court of the source of the $35,000 transferred by the debtor to the defendant. No such evidence was presented to the court. As the moving party, it was clearly up to the trustee to prove to the satisfaction of the court that the debtor had an "interest" in the property transferred and the extent of such interest. The entire $35,000 may have been generated by R–C Boaz, and the debtor may have had no interest in that sum or it may be impossible to determine whose money it was or in what proportions it was owned. In any of those events, no judgment could be entered for the plaintiff. Having failed to satisfy these basic questions, the trustee cannot recover, even if the defendant is held to have the burden of going forward with evidence to show lack of harm to the debtor's estate in circumstances such as are found in this case. The court concludes that the plaintiff's complaint is not sustained and is due to be dismissed.

*Judgment and Order*

In view of the foregoing, it is the judgment of the court that the relief sought by the plaintiff is denied, and it is ORDERED by the court that the plaintiff's complaint and this adversary proceeding are dismissed out of court and that a copy hereof shall be sent through the United States mails to each of the following (which shall be sufficient service and notice of this judgment and order): the trustee's attorney, the defendant, his attorney, the United States trustee, and the debtor's attorneys.

---

**3.** *Rubin v. Manufacturers Hanover Trust Co.,*     661 F.2d 979 (2nd Cir. 1981).