### In re EAR, NOSE AND THROAT SURGEONS OF WORCESTER, INC., Debtor.

### EAR, NOSE AND THROAT SURGEONS OF WORCESTER, INC., Plaintiff,

### v.

### GUARANTY BANK AND TRUST COMPANY, Defendant.

**Bankruptcy No. 4–82–00592–G.**
**Adv. No. 4–83–0002.**

United States Bankruptcy Court,
D. Massachusetts.

May 23, 1985.

Alan Garber, Boston, Mass., for debtor/plaintiff Ear, Nose & Throat Surgeons of Worcester, Inc.

Roy A. Bourgeois, Worcester, Mass., for Shawmut Worcester County Bank, N.A.

Thomas M. Dickinson, Weinstein, Bernstein & Burwick, P.C., Worcester, Mass., for defendant Guaranty Bank.

Richard P. Salem, Leicester, Mass., trustee.

## MEMORANDUM AND ORDER RE COMPLAINT FOR DETERMINATION OF SECURED STATUS

PAUL W. GLENNON, Bankruptcy Judge.

This case comes to this Court on a complaint, originally filed by the debtor to de-

termine the secured status of a creditor bank.

## FACTS

Debtor, Ear, Nose and Throat Surgeons of Worcester, Inc. ("ENT") is a professional corporation organized under the laws of the Commonwealth of Massachusetts and is engaged in the business of dispensing medical services.

Jon B. Liland, M.D. ("Liland") is the sole shareholder, officer and director of ENT. At all times relevant hereto, Liland was the sole physician employed by ENT.

On February 3, 1982, the defendant, Guaranty Bank & Trust Company ("GBT") made a personal loan to Liland in the amount of $35,000.00. On March 19, 1982, GBT loaned an additional $100,000.00 to Liland in the form of a line of credit. On that same day, ENT executed and delivered to GBT a written guarantee for Liland's indebtedness of $135,000.00 and secured that guarantee with a security agreement granting GBT a secured interest in ENT's accounts receivable. Both the guarantee and the security agreement were signed by Jon B. Liland, as president of ENT. Consent was given by ENT for the granting of both the guarantee and the security interest in an undated document, also signed by Liland as the sole Director and stockholder of ENT.

At the time ENT granted this security interest, its Accounts Receivable, which constituted its major asset, were worth approximately $158,000.00. Its Accounts Payable totalled approximately $137,000.00.

The $135,000.00 received by Liland was spent almost entirely on his personal expenses. The sole exception was one $8,000.00 check written by Liland to ENT, to pay a tax bill assessed to ENT. A large portion of the proceeds from the loans was apparently spent on studying the possibility of converting a building at 48 Elm Street in Worcester to condominiums. Although the building contained ENT's offices, it was personally owned by Liland.

ENT filed a petition pursuant to Chapter 11 of the United States Bankruptcy Code on December 16, 1982. On January 5, 1983, ENT filed a complaint for determination of secured status of the debt owed to GBT. Shawmut Worcester County Bank, N.A. ("Shawmut"), an unsecured creditor of ENT, filed a motion for leave to intervene as an additional party plaintiff on January 21, 1983. Its motion was allowed on January 28, 1983.

A trial on ENT's motion for determination of secured status was held on January 28 and February 3, 1983. On March 7, 1983, the case was voluntarily converted to a case under Chapter 7.

At the trial, GBT objected to the admission of Exhibit 12, a purported summary of ENT's Accounts Payable as of March 15, 1982 and as of April 19, 1982. The exhibit was admitted *de bene esse*. GBT filed a motion to strike on February 18, 1983. On August 4, 1983 a hearing was held on the admissibility of Exhibit 12.

## DISCUSSION AND CONCLUSIONS OF LAW

I. *Motion to Strike a Summary Admitted as an Exhibit at Trial*

■ GBT objects to the admissibility of Exhibit 12, alleging that it is inadmissable under Rule 1006 of the Federal Rules of Evidence. Rule 1006 provides that voluminous evidence which cannot conveniently be examined in Court may be introduced in the form of a summary. It further requires that the original records, or duplicates of them, must be made available for examination or copying by other parties.

Exhibit 12 purports to be a summary of the trade payables of ENT on March 15, 1982, four days before ENT granted the security interest to GBT, and on April 19, 1982. Exhibit 12 appears to exactly fit the purpose of Rule 1006. It is an accounting summary based upon a voluminous number of invoices. GBT was given an opportunity to examine the underlying records and to cross-examine the person who prepared the

summary. See *Matter of Beverage Transport, Inc.*, 2 B.R. 367, 369 (W.D.N.Y.1980).

GBT objects to the admissibility of this summary on the grounds that it is so substantially inaccurate as to render it misleading and without probative force. The Court disagrees. At the hearing on the admissibility of this document, alleged inaccuracies in several of the amounts listed were pointed out by a witness for GBT. These inaccuracies were few in number and involved small amounts of money [1] in comparison to the total amount involved. The Court finds, therefore, that any discrepancies which exist are not so great as to render Exhibit 12 misleading and without probative force. GBT's Motion to Strike Exhibit 12 is denied.

## II. *Complaint to Determine Secured Status of Guarantee Bank & Trust*

The Trustee seeks to set aside and have declared invalid the loan guarantee and security agreement made by ENT to GBT. The Trustee seeks to accomplish this under both Section 548 of the Bankruptcy Code [2] and under applicable Massachusetts law.

■ In cases under Section 548, the burden of proof is on the trustee (the party seeking to avoid the transfer). 4 *Collier on Bankruptcy*, § 548.10 at 548–111, 112 (15th Ed., 1985). The Trustee attempted to have the loan guarantee and the security agreement set aside under Section 548(a)(1), but failed to offer any proof of "actual intent" on the part of the Debtor to "hinder, delay, or defraud" any creditor.

The Court, therefore, rejects any claim that the transfers be set aside under that section.

■ The Trustee also relied on Section 548(a)(2)(A) and (B)(i) and (ii), which deals with constructively fraudulent transfers. To set aside a transfer under this Section, four elements must be proven. It must be shown that, 1) there was a transfer of an interest of the debtor in property 2) which occurred within a year of the filing in Bankruptcy. The trustee must also show, 3) that the debtor received less than a reasonably equivalent value in exchange for this transfer; and 4) that the debtor was either insolvent on the date of the transfer, became insolvent as a result, or was left with an unreasonably small capital. *In the Matter of Curtina International, Inc.*, 23 B.R. 969, 973 (Bankr.S.D.N.Y.1982).

The first two elements, whether there was a transfer of a debtor's interest in property within a year of filing, are not really in dispute in this case. Section 101(41) of the Bankruptcy Code defines "transfer" as "every mode, absolute or conditional, ... of disposing of or parting with ... an interest in property ..." The granting of a security interest by ENT in its account receivables was a transfer by a debtor of an interest in property. The security interest was granted on March 19, 1982, well within a year of the filing of the Petition in Bankruptcy on December 16, 1982.

---

**1.** For example, Exhibit 12 stated that the balance due to New England Telephone on April 19, 1982 was $292.69. GBT's accountant said the actual amount was $291.69, a difference of one dollar.

**2.** Section 548 provides, in relevant part, as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity to which the debtor was

or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(iii) was engaged in business or a transaction or was about to engage in business or a transaction, for which any property remaining with the debtor was unreasonably small capital; ...

The third element, which involves the question of whether the debtor received less than a reasonably equivalent value in exchange for granting the security interest, is a more complex issue. A three-sided transaction, such as the one *sub judice*, presents special difficulties in defining "reasonably equivalent value" under Section 548. "It may be said that, as a general rule, an insolvent debtor receives 'less than a reasonable equivalent value' where it transfers its property in exchange for a consideration which passes to a third party. In such case, it ordinarily receives little or no value." *In re Royal Crown Bottlers of North Alabama, Inc.*, 23 B.R. 28, 30 (Bankr.N.D.Ala.1982). An exception to this rule is the case where the debtor and the third party "are so related or situated that they share an 'identity of interests' because what benefits one will, in such case, benefit the other to some degree." *Id. See, Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2nd Cir.1981); *In the Matter of Winslow Plumbing, Heating, and Contracting Co.*, 424 F.Supp. 910 (D.Conn.1976). The question then becomes one of determining the value of this vicarious benefit to the debtor, and weighing it to see if it is "reasonably equivalent" to the value of the property transferred. *In re Royal Crown Bottlers of North Alabama, Inc., supra.*

In the present case it is clear that Liland and ENT share, to some degree, "an identity of interests." Liland is the president, director, and sole shareholder of ENT. Liland's medical practice generated the major portion of ENT's income.

The United States Court of Appeals for the Second Circuit has indicated that the trustee must prove not only that consideration passed to a third party, but that the value of any benefit received by the debtor, in comparison to any value given by the debtor, was less than a "reasonably equivalent value," *Rubin v. Manufacturers Hanover Trust Co., supra.* The trustee in this case has met that burden. As a result of the transactions in question, GBT received a security interest in all of ENT's accounts receivable and a guarantee by ENT of a $135,000.00 loan. Liland received $135,000.00. The value of any benefit received by ENT was significantly less than the value of what ENT transferred to GBT. Although GBT argued that the $135,000.00 lent to Liland was lent to him as working capital · for ENT, Liland's testimony was that the money was spent to pay off his personal debts and expenses. A significant portion of the loan money was apparently spent on a study of the feasibility of turning the building at 48 Elm Street into condominiums. Although this building was used by ENT, it was owned by Liland personally. The only evidence of any benefit received by ENT as a result of these transactions is one $8,000.00 check written by Liland to ENT to enable ENT to pay certain taxes which it owed. The benefit received by ENT cannot be said to be reasonably equivalent in value to the value of the security interest granted to GBT and to the guarantee of a $135,000.00 loan.

Finally, the Trustee must prove that ENT was insolvent at the time of these transactions, or that the transactions resulted in ENT's insolvency, or that it left them with an unreasonably small amount of capital. "Insolvent", as defined by Section 101(26) of the Bankruptcy Code, means: "(a) financial condition such that the sum of (the) ... entity's debts is greater than all of such entity's property, at a fair valuation ..."

The financial picture of ENT presented by the evidence in this case, while somewhat sketchy, is sufficient to support a finding that the debtor, ENT, was rendered insolvent by these transactions, or at the very least, left with insufficient capital. Liland testified that ENT's major asset was its Accounts Receivable and that these accounts usually totalled somewhere in the vicinity of $150,000.00. The last page of ENT's Accounts Receivable list for January 6, 1982 indicates that they totalled $158,232.60 at that time. The only other asset of ENT was some office equipment and furniture, all of which was several years old at the time in question. The Trustee also introduced a summary of

ENT's accounts payable for the dates of March 15, 1982, four days before ENT guaranteed the loan and granted GBT a security interest, and for April 19, 1982. The total of Accounts Payable on March 15, 1982 was $137,606.75. The total on April 19, 1982 was $119,335.60. Liland also testified that ENT had a contingent liability of approximately $250,000.00 to the Worcester County National Bank.

■ The question of whether ENT was rendered insolvent turns on whether the loan guarantee is considered a "debt". "Debt" is defined in Section 101(11) as a "liability on a claim." Section 101(4) of the Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Given this definition, ENT's guaranty must be considered a debt of the corporation. When added to the amount of the Accounts Payable at the time, approximately $137,000.00, ENT's liabilities exceeded $270,000, far outstripping the amount of ENT's assets. Thus, as a result of guaranteeing GBT's $135,000.00 loan to Liland, ENT became insolvent.

This Court finds that, having satisfied the burden of proof under Section 548 of the Bankruptcy Code, the Trustee is entitled to have ENT's guarantee of the loan to Liland, and its grant of a security interest in its Accounts Receivable, set aside and declared null and void.

## CONCLUSION

Having found that the transfer of ENT's property interest to GBT may be set aside under the Bankruptcy Code, this Court finds it unnecessary to rule on the Trustee's claim that the transfer may also be avoided under the laws of the Commonwealth of Massachusetts.

In consideration of the above, and of the record in this case, and all arguments of counsel, whether or not discussed, the following order shall enter.

## ORDER

Exhibit 12, a summary of ENT's Accounts Payable as of March 15, 1982 and as of April 19, 1982, admitted *de bene esse* at trial, is ruled admissable.

ENT's guarantee of Liland's $135,000 indebtedness to GBT, and the security agreement granting GBT a security interest in the accounts receivable of ENT, are hereby avoided pursuant to Section 548 of the Bankruptcy Code.