**In re CHICAGO, MISSOURI & WESTERN RAILWAY COMPANY, Debtor.**

**Daniel R. MURRAY, Trustee, Plaintiff,**

**v.**

**PRESCOTT, BALL & TURBEN, INC., Defendant.**

Bankruptcy No. 88 B 5141.
Adv. No. 90 A 209.

United States Bankruptcy Court,
N.D. Illinois.

Jan. 23, 1991.

Patrice A. Powers, of Towbin & Zazove, Ltd., Chicago, Ill., for plaintiff.

Daniel M. Pellicioni, of Katten, Muchin & Zavis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court on the motion of Prescott, Ball and Turben, Inc. ("Prescott") to dismiss the Amended Complaint for Avoidance and Recovery of Voidable Transfers ("Amended Complaint") of Daniel Murray, Trustee for the Chicago, Missouri and Western Railway Company ("CM & W"). In the Amended Complaint, the Trustee in six counts seeks to avoid and recover as fraudulent conveyances or preferences, payments made and obligations incurred by CM & W for professional services rendered by Prescott. For the reasons set forth herein, the court, after considering the pleadings, memoranda and exhibits filed, denies Prescott's motion to dismiss the Amended Complaint.

## JURISDICTION

By filing a proof of claim in these proceedings, Prescott has submitted itself to the jurisdiction of the bankruptcy court. *See Langenkamp v. Culp,* — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). The court has jurisdiction to entertain the adversary proceeding and the motion to dismiss pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(F) and (H).[1]

1. 11 U.S.C. §§ 101–330 (1982 & Supp.1990). All section references are to the Bankruptcy Code unless otherwise noted.

## FACTS AND BACKGROUND

CM & W was incorporated on February 13, 1986 as a wholly owned subsidiary of Venango River Corporation ("Venango"), for the purpose of acquiring and operating certain rail lines in Illinois and Missouri. Beginning in October of 1985, Venango entered into negotiations with Illinois Central Railroad ("ICR") to purchase portions of ICR's rail lines and certain assets ("Rail Assets"). In February of 1986, Venango hired Prescott to act as investment advisor in connection with the acquisition of the Rail Assets from ICR. Venango later expanded Prescott's services to include the obtaining of financing for the purchase of the Rail Assets. In addition, Prescott was hired to obtain funds for the refinancing of Chicago South Shore ("CSS"), another wholly owned subsidiary of Venango.

On April 28, 1987, Venango caused the closing of the acquisition of the Rail Assets from ICR with funds obtained from the financing arranged by Prescott. CM & W became the owner of the assets as well as an obligor under the arranged financing. During February 1986–April 28, 1987, while Prescott was rendering its services in connection with the acquisition of the Rail Assets, Venango entered into three fee agreements with Prescott. The third fee agreement dated April 28, 1987, superseded the first and second fee agreements. The April 28, 1987 fee agreement signed by Venango, CM & W and CSS, provided that Venango would pay Prescott's fees and expenses for its investment banking services. The agreement stated that $2,867,500 of the fees and expenses would be paid at the closing of the purchase of the Rail Assets[2] and the balance was to be evidenced by a promissory note ("Note"). The Note was made jointly and severally by Venango, CM & W and CSS. At the time of the closing of the purchase of the Rail Assets, Prescott received $2,867,500 in cash and stock warrants from CM & W and delivery of the Note in the principal sum of $2,675,000.00.

2. The $2,867,500 cash payment was broken down as follows: $2,705,000 as the first installment of the Financing Fee, $125,000 as the Revolver Fee and $37,500 as Prescott's out of pocket expenses.

On April 1, 1988, within one year of the transfer of the cash payment and Note to Prescott, CM & W filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Prescott's claim filed on December 22, 1989, seeks to recover the amount remaining on the Note.

On March 30, 1990, the Trustee filed his Complaint For Recovery of Fraudulent Conveyances against Prescott. On August 15, 1990, the Trustee filed the Amended Complaint. The substance of the Amended Complaint is that the cash payment and the Note given by CM & W to Prescott are avoidable as fraudulent transfers under § 548 or alternatively that the cash payment is avoidable as a preference under § 547. Prescott filed a motion to dismiss all six counts of the Amended Complaint.

## DISCUSSION AND ANALYSIS

### I. STANDARD FOR MOTION TO DISMISS

Prescott's motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6) made applicable to this adversary proceeding by Bankruptcy Rule 9012. In a motion to dismiss, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the non-moving party. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984); *In re Doppelt (Continental Illinois National Bank and Trust Co. v. Doppelt)*, 57 B.R. 124, 127 (Bankr.N.D.Ill.1986). The court should grant a motion to dismiss a complaint only if it appears beyond question that the plaintiff can prove no set of facts that would entitle it to relief. *Wolfolk*, 729 F.2d at 1116; *Doppelt*, 57 B.R. at 127. The issue is not whether the Trustee will ultimately prevail on its adversary complaint, but whether the Trustee has pled a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). This Court finds that

the Counts I, II, III, IV and VI of Trustee's Amended Complaint set forth a cause of action under § 544, § 548 and § 550 sufficient to defeat the motion to dismiss. The Court also finds that the Trustee has asserted sufficient facts in Count V to establish a cause of action under § 547 and § 550.

### II. FRAUDULENT CONVEYANCE

In Counts I–IV of the Amended Complaint, the Trustee seeks to avoid and recover the $2,867,500 cash payment by CM & W to Prescott and to avoid CM & W's obligation on the Note under § 544[3], § 548, and § 550. To state a claim under § 548, the Trustee must allege 1) a transfer of an interest of the debtor in property, 2) within one year before bankruptcy, 3) for which the debtor received less than reasonably equivalent value and 4) that the debtor was insolvent on the date of transfer. In the motion to dismiss, Prescott disputes only the third element. Thus, the only issue before the Court is whether the Trustee has sufficiently alleged that CM & W did not receive reasonably equivalent value in exchange for the Transfers.

Whether a transfer is made for reasonably equivalent value is a question which must be determined on the facts and circumstances of each case. *In re Bundles (Bundles v. Baker)*, 856 F.2d 815, 824 (7th Cir.1988). *In re Ozark Restaurant Equipment Co., Inc. (Jacoway v. Anderson)*, 850 F.2d 342, 344 (8th Cir.1988). The Bankruptcy Code does not define the term "reasonably equivalent value". Instead, the Bankruptcy Code defines the term "value" for the purposes of a fraudulent transfer as satisfaction of an antecedent debt of the debtor. § 548(d)(2)(A).

Generally, transfers made or obligations incurred solely for the benefit of third parties do not furnish reasonably equivalent value. *Bullard v. Aluminum Co. of America*, 468 F.2d 11, 14 (7th Cir. 1972); *In re Ear Nose and Throat Surgeons (Ear Nose and Throat Surgeons v.*

---

**3.** Section 544(b) allows the Trustee to avoid any transfer incurred by CM & W which is voidable under state law. The Illinois fraudulent conveyance statute in effect at the time of the cash payment and delivery of the Note was Ill.Rev. Stat. ch. 59 § 6. Because the analysis under the Illinois statute parallels 11 U.S.C. § 548, the discussion of Counts I and II applies equally to Counts III and IV.

*Guaranty Bank and Trust Co.),* 49 B.R. 316, 320 (Bankr.D.Mass.1985). In addition, when it is the debtor-subsidiary which makes a transfer resulting in consideration passing to the parent corporation, the benefit to the debtor is presumed to be nominal unless there is proof of a specific benefit to it. *In re Royal Crown Bottlers (Garrett v. Falkner),* 23 B.R. 28, 30 (Bankr.N.D.Ala. 1982). In the present case, the facts pleaded, taken in the light most favorable to the Trustee, could support a finding that the transfers by CM & W were on the account of the antecedent debt of Venango. Venango retained Prescott and agreed to pay Prescott for its investment banking services. It could be determined that CM & W only agreed to become liable to Prescott after all its services were completed by signing the Note.

■ An exception to the general rule that a transfer made for the benefit of third parties does not constitute reasonably equivalent value can be found where the debtor receives the benefit of the original consideration. *In re Computer Universe, Inc. (Hall v. Arthur Young),* 58 B.R. 28, 31 (Bankr.M.D.Fla.1986). For example, in *In re Evans Potato Co., Inc. (Butz v. Sohigro Service Co.),* 44 B.R. 191, 193–194 (Bankr. S.D.Ohio 1984) the court held that the debtor corporation received reasonably equivalent value for payment of an individual's debt because the debtor received the goods for which the debt was incurred. Here, Prescott alleges that the benefit received by CM & W was the acquisition of the Rail Assets and the financing. However, even assuming that CM & W did receive a benefit from Prescott's services, a factual determination must still be made as to whether the benefit received is reasonably equivalent to the five million dollars plus charged by Prescott.

■ Prescott alleges that in order to establish that less than reasonably equivalent value was received for professional services, the Trustee must demonstrate either that the professional did not provide the service or that the professional charged an improperly high fee for the service. Pres-

cott contends that a fraudulent conveyance action can never be based on the quality of the services rendered by a professional. However, to hold that professional services are beyond the scope of the fraudulent conveyance laws except in these two limited circumstances clearly defeats the purpose of the statute which is to conserve the debtor's estate for the benefit of creditors. *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 991 (2nd Cir.1981).

■ The reasonably equivalent value test requires the court to examine all aspects of the transaction to measure carefully the value of the benefits and burdens to the debtor. *In re Vadnais Lumber Supply, Inc. (Vadnais Lumber Supply v. Byrne),* 100 B.R. 127, 136 (Bankr.D.Mass. 1989). At this point it cannot be said that the Trustee could prove no set of facts which would entitle it to relief, and Prescott's motion to dismiss the Trustee's Amended Complaint is denied as to Counts I, II, III, IV and VI.[4]

### III. PREFERENTIAL TRANSFER

■ Alternatively, the Trustee alleges in Count V of the Amended Complaint that the $2,867,500 payment by CM & W to Prescott was a preferential transfer under § 547. Generally, only payments made in the 90 days before the filing of a bankruptcy may be recovered under § 547 and § 550. However, the preference period can be extended to one year if payments are made to or for the benefit of an insider-creditor. To recover against Prescott under § 547, the Trustee must prove 1) the transfer was for the benefit of Venango, an insider and creditor of CM & W 2) the transfer was on account of an antecedent debt owed by CM & W 3) the transfer was made while CM & W was insolvent 4) the transfer was made within one year of the bankruptcy filing and 5) the transfer enabled Prescott to receive more than it would have received if the case were under Chapter 7 of Title 11, the transfer had not been made and Prescott received payment to the extent provided by the provisions of Title 11. Elements 1) and 2) are in dispute.

---

**4.** In Count VI, the Trustee seeks to disallow Prescott's claim under § 502(d) on the basis that Prescott's claim is an avoidable transfer. The court denies Prescott's motion to dismiss Count VI.

Prescott argues that Count V must be dismissed because CM & W fails to allege that the cash payment made to Prescott was on account of an antecedent debt owed by CM & W. In paragraph 44 of the Amended Complaint, the Trustee states, "Upon information and belief, at least substantial portions of the payment to Prescott were on account of the antecedent debt." Simply because the Trustee alleged in Counts I–IV that CM & W was not liable to Prescott, does not prevent the Trustee from alleging in Count V, that CM & W was obligated to Prescott. Pursuant to Fed.R.Civ.P. 8(e)(2) and Bankruptcy Rule 7008, a party is allowed to set forth inconsistent allegations. The inconsistency may lie either in the statement of facts or in the legal theories. 3 Moore's Federal Practice § 9.06 (1990). Further, the Trustee has asserted sufficient facts to establish a preference cause of action.

 Based on the facts presented and the April 28, 1987 fee agreement, the court could find that the CM & W and Venango were jointly and severally liable for Prescott's fees. If that is the case, CM & W's paying $2,867,500 to Prescott would have been on account of CM & W's antecedent debt and would have benefited Venango by reducing its debt to Prescott. This would also make Venango a creditor of CM & W. A creditor is defined in § 101(9)(A) as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." § 101(4)(A). If CM & W and Venango were jointly and severally liable for Prescott's fees, Venango would be a creditor of CM & W because Venango would have a contingent contribution claim against CM & W for payments made to Prescott.

In *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989), the Seventh Circuit held that a payment made by a debtor to a lender within one year of the debtor's bankruptcy filing could be recovered from the lender because such pay-ments benefited an insider-guarantor who was also a creditor. The court found that the insider was a creditor of the debtor because the insider held a contingent claim against the debtor for any payments he might be required to make on his guaranty. Further, the *Levit* court held that the payment which could be avoided under § 547, could be recovered from either the initial transferee (the lender) or from the insider who benefited from the payment. 874 F.2d at 1194–1197. Similarly, under § 550, if the Trustee proved that the payment to Prescott was a preferential transfer, he could recover the payment from Prescott.

The court can not state that the Trustee could prove no set of facts which would entitle it to relief under § 547 and § 550. Therefore, the court denies Prescott's motion to dismiss Count VI of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the court denies Prescott's motion to dismiss the Trustee's Amended Complaint.