In re OCEAN LINE OF NORTH FLORIDA, Debtor.

Valerie Hall MANUEL,
Trustee, Plaintiff,

v.

TWENTY GRAND OFFSHORE,
INC., Defendant.

Bankruptcy No. 90–1778–BKC–3P7.
Adv. No. 90–248.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 25, 1992.

Ronald Bergwerk, Jacksonville, Fla., for plaintiff.

James J. Taylor, Jr., Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Plaintiff, Valerie Hall Manuel, as trustee of the estate of Ocean Line of North Florida, filed a complaint against defendant Twenty Grand Marine Services, Inc.[1] ("Twenty Grand") seeking to avoid a transfer under 11 U.S.C.A. § 548(a)(2).[2] A trial was held on October 23 and 28, 1991, and, upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Debtor's business consisted of the transportation of cargo containers from Fernandina Beach, Florida, to San Juan, Puerto Rico. Debtor chartered the barges to transport the cargo containers.

Debtor initially chartered two barges, the Ocean Carrier I and Ocean Carrier II, from Ocean Carrier Corporation ("Ocean Carrier"). Debtor subsequently terminated the Ocean Carrier agreement and, on March 1, 1990, chartered two larger barges (UMTB 331 and UMTB 340–3) from United Marine Tug & Barge, Inc. ("Unimar").

The Ocean Carrier and Unimar barges were provided to Debtor without lashing gear which is used to secure the cargo containers. Instead, when it commenced operations in early 1988, Debtor purchased a stock of lashing equipment. The equipment was procured through Morton Chain Company and consisted primarily of equipment manufactured by Inter.

Debtor had a sufficient inventory of gear to equip the barges, plus a small inventory on the docks that had been removed for maintenance, but debtor did not maintain an ongoing inventory of such equipment.

In the summer of 1989, Debtor discussed a merger with Carolina Atlantic Transportation Services, Inc. ("CATS"). CATS was also in the cargo container transportation business, shipping out of Wilmington, North Carolina, to San Juan, Puerto Rico.

In early 1990 CATS moved its mainland port from Wilmington to Fernandina Beach, where it shared docking facilities with Ocean Line. The merger negotiations were never consummated.

CATS chartered its barges from defendant. Initially defendant furnished CATS with the barges CATS 252 and CATS 253. However, the Tidemar 50 and Tidemar 51 were substituted into service at various times.

---

1. Upon plaintiff's ore tenus motion at trial, Twenty Grand Offshore, Inc. was substituted for Twenty Grand Marine Service, Inc. as the proper defendant.

2. The trustee's amended complaint also asserts a claim under § 547. However, on defendant's motion at trial, the Court dismissed the § 547 claim.

Defendant provided the barges to CATS equipped with Peck and Hale lashing gear. Peck and Hale, like Inter, is a major manufacturer of lashing equipment. CATS was obligated to return or replace the gear upon termination of the charter agreement.

CATS redelivered the CATS 252 to defendant in July, 1989. The CATS 253 was redelivered in December, 1989, and the Tidemar 50 in January 1990. The Tidemar 51, the final barge under charter, was redelivered in late February, 1990, after CATS had ceased doing business. Of all the lashing gear provided with the barges, only three twist locks were returned upon redelivery of the four barges.

Believing that its gear had been improperly intermixed with that of debtor's, defendant filed a complaint against the UMTB 331 in the United States District Court for the Middle District of Florida, Jacksonville Division, case number 90–302–Civ–J–12 (Honorable Howell W. Melton) on April 16, 1990. Pursuant to the complaint, the UMTB 331 was arrested in Fernandina on April 16, 1990.

Unable to post the necessary bond to release the barge, debtor agreed to settle the suit. Debtor delivered 1,888 twist locks, 916 turnbuckles, 275 long rods, 418 short rods, and $10,000.00 to defendant in return for the release of the barge and dismissal of the complaint.

The returned gear was collected from the arrested barge, the dock at Fernandina, and the storage shed on the dock. The transfer of the equipment occurred on April 19, 1990. The equipment retrieved represented approximately fifty percent of the gear being used by debtor in its operations at that time.

Upon receiving the equipment, defendant released the barge and dismissed the District Court complaint with prejudice. After her release from arrest, debtor continued to use the UMTB 331 in its operation.

Debtor filed a chapter 11 petition on May 19, 1990. The case was converted to chapter 7 on August 8, 1990.

## CONCLUSIONS OF LAW

11 U.S.C. § 548 provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

■ The trustee has the burden of proof on all issues in a fraudulent conveyance action. *In re Rodriguez*, 895 F.2d 725, 726 n. 1 (11th Cir.1990); *In re Vurchio*, 107 B.R. 363, 364 (Bankr.M.D.Fla.1989) (citing *In re Damason Construction Corp.*, 101 B.R. 775, 777 (Bankr.M.D.Fla.1989)).

In order to prevail under § 548(a)(2) the trustee must prove the following:

1) that there was a transfer of an interest of the debtor in property,

2) that the transfer occurred within one year preceding the filing of the bankruptcy petition,

3) that the debtor received less than a reasonably equivalent value in exchange for this transfer, and

4) that the debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact.

*In re Damason Construction Corp.*, 101 B.R. 775, 777 (Bankr.M.D.Fla.1989); *In re*

*Ear, Nose and Throat Surgeons, Inc.,* 49 B.R. 316 (Bankr.D.Mass.1985).

■ To succeed under the first element, the plaintiff must demonstrate that a transfer of debtor's interest in the lashing gear occurred. Although a dispute existed as to the ownership rights, the debtor clearly had a possessory interest in the equipment. That interest was transferred on April 19, 1990, when defendant took possession of the gear in accordance with the settlement agreement. Therefore, the plaintiff has met the burden on the first factor.

The transfer occurred on April 19, 1990, and debtor filed a chapter 11 petition on May 19, 1990. Thus, the transfer was made within the year preceding the bankruptcy filing and the second element under § 548(a)(2) has been satisfied.

■ Next, the trustee has the burden of showing that debtor did not receive a reasonably equivalent value for the transfer of the equipment. Defendant contends that the release of the vessel and dismissal of the district court lawsuit constitute reasonably equivalent value.

The Bankruptcy Code does not define "reasonably equivalent value"; however, § 548(d)(2)(A) defines "value" to include "property, or satisfaction or securing of a present or antecedent debt of the debtor...." In exchange for the lashing gear, debtor received "property" in the form of the release of the seized vessel and the dismissal of the pending lawsuit.

■ In addition, settlement of defendant's maritime lien claim against the vessel constituted "satisfaction of a present debt" within the meaning of § 548(d)(2)(A). *See, e.g., In re Wey,* 78 B.R. 892, 896 (C.D.Ill.1987) (forfeiture of money in satisfaction of contract obligation constitutes satisfaction of a present debt for purposes of § 548(d)(2)(A)), *aff'd,* 854 F.2d 196 (7th Cir.1988).

In *In re American Trading & Shipping, Inc.,* 24 B.R. 32 (Bankr.S.D.Fla.1982), the Court held that the release from maritime arrest of a vessel under charter to the debtor gave the debtor "a substantial interest in the [v]essel as lessee" and constitut-

ed value for purposes of § 548(a)(2). *Id.* at 36. This Court agrees with such ruling and is unable, under the evidence, to find that the value received by Ocean Line was less than a reasonably equivalent value for the lashing gear. To the contrary, given the impact of the arrest of the barge on debtor's operation, it appears that the settlement provided reasonably equivalent value for debtor's interest in the equipment. Consequently, plaintiff has failed to meet her burden on this element.

■ final factor under § 548(a)(2) concerns the solvency of the debtor at the time of the transfer. The debtor's balance sheets two and one-half weeks prior to the transfer indicated assets of $4,026,438.47 and liabilities of $6,328,050.16. Having debts substantially in excess of assets less than three weeks before the transfer, it is logical to infer that the debtor was insolvent at the time of the transfer. Thus, the plaintiff has satisfied the final element of § 548(a)(2).

## CONCLUSION

Having proven that the transfer of the equipment was a transfer of debtor's interest in property made within one year of filing bankruptcy and while debtor was insolvent, plaintiff satisfied three of the elements of § 548(a)(2). However, plaintiff failed to establish that the transfer was for less than reasonably equivalent value and, therefore, cannot prevail.

A separate Final Judgment in favor the defendant will be entered.