**In re KEITH EICKERT POWER PRODUCTS, LLC, Debtor.**

**Keith Eickert Power Products, LLC, Post–Confirmation Estate, Plaintiff,**

v.

**Escada (USA), Inc., Defendant.**

**Bankruptcy No. 03–05234–3F1.**
**Adversary No. 05–00158–JAF.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 16, 2006.

---

Robert D. Wilcox, Jacksonville, FL, for Plaintiff.

Gardner Davis, Jacksonville, FL, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon a complaint to avoid a fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 548, avoid a preferential transfer pursuant to 11 U.S.C. § 547, and recover property pursuant to 11 U.S.C. § 550 (the "Complaint") filed by Keith Eickert Power Products, LLC, Post–Confirmation Estate ("Plaintiff"). The Court conducted a trial on April 27, 2006. The parties argued their respective positions and submitted trial briefs. At trial Plaintiff asserted that it did not seek to avoid a transfer as a

preference under 11 U.S.C. § 547. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The parties submitted a Factual Stipulation for Trial ("Stipulation") to expedite a decision on the matter. The Court will restate the relevant facts as noted in the Stipulation.

Keith Eickert Power Products, LLC, a Delaware limited liability company (the "Company") filed a voluntary petition under for relief under Chapter 11 on May 21, 2003 (the "Petition Date"). (Stipulation at ¶ 1.) The Company's business specialized in marine engines and products. (*Id.* at ¶ 2.) Juliana Sullivan ("Sullivan") either solely owned or was the one-half owner of the Company during relevant times prior to the Petition Date. (*Id.* at ¶ 3.) At some point prior to July 2001, Sullivan began dipping into Company property for her own personal use, thereby disregarding the distinction between Company property and her personal property. (*Id.* at ¶ 4.) Because of Sullivan's actions, Plaintiff has filed an adversary proceeding against her for over $1,000,000.00. (*Id.* at ¶ 5.)

Escada (USA), Inc. ("Escada") is an international luxury fashion group, selling women's designer fashions. (*Id.* at ¶ 6.) Escada owns approximately 201 stores and has franchised approximately 303 shops/corners in over 60 countries. (*Id.*) On or about November 20, 2002, Sullivan purchased $2,800.95 of merchandise, consisting of women's clothing and accessories, from Escada's Bal Harbor, Florida store (the "Escada Purchase"). (*Id.* at ¶¶ 7–8.) She paid for the merchandise with a Company debit card, which directly accessed the Company's bank account. (*Id.* at ¶ 8.) Therefore, on or about November 20, 2002, $2,800.95 of Company funds

were transferred to Escada in exchange for women's clothing and accessories, which were not used in the production of marine engines. (*Id.*) Escada sold the merchandise "to Sullivan in its ordinary course of business, at customary prices and without knowledge of the Company's financial position." (*Id.* at ¶ 9.) Concomitant with the Escada Purchase, Sullivan also used the Company debit card for additional personal purchases and cash withdrawals. (*Id.* at ¶ 10.)

As of early 2003, the Company's liabilities exceeded its assets by approximately $550,000.00. (*Id.* at ¶ 11.) Statements that the Company filed in pre-petition litigation between it and its senior secured creditor revealed that the Company had assets of $2.1 million and liabilities of $2.65 million. (*Id.*) Plaintiff believes this was most likely due to various factors, such as inflation of Company assets and parts, as well as overstatement of the Company's true 2002 income. (*Id.*) The parties stipulate that the Company's financial position was substantially the same as of November 2002, whereby the Company's liabilities exceeded Company assets by approximately $1.8 million. (*Id.*)

## CONCLUSIONS OF LAW

A Chapter 11 debtor-in-possession has authority under 11 U.S.C. § 548 to avoid fraudulent transfers. *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Section 548 provides in relevant part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily—

. . .

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, ....

11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I) (2005). To avoid such a transfer, the debtor-in-possession, which bears the burden of proof on all issues, must prove

1) that there was a transfer of an interest of the debtor in property,

2) that the transfer occurred within one year preceding the filing of the bankruptcy petition,

3) that the debtor received less than a reasonably equivalent value in exchange for this transfer, and

4) that the debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact.

*Manuel v. Twenty Grand Offshore (In re Ocean Line of North Florida)*, 137 B.R. 540, 542 (Bankr.M.D.Fla.1992)(citing *In re Damason Constr. Corp.*, 101 B.R. 775, 777 (Bankr.M.D.Fla.1989) and *In re Ear, Nose and Throat Surgeons, Inc. of Worcester*, 49 B.R. 316 (Bankr.D.Mass.1985)). Therefore, in the case before the Court, Plaintiff must prove that a transfer of the Company's funds had occurred one year prior to the Petition Date, that the Company received less than a reasonably equivalent value in exchange for its funds, and that the Company was insolvent at the time of the Escada Purchase.

■ Based upon the Stipulation, the aforementioned issues have been met. The Escada Purchase was paid for with a Company debit card, which directly accessed the Company's bank account. (Stipulation at ¶ 8.) The Company had a property interest in its own bank account

funds. Second, the Escada Purchase occurred on or about November 20, 2002, which was within one year prior to the Petition Date of May 21, 2003. (*Id.* at ¶ 1.) Third, the parties stipulate that as of November 2002, the Company's liabilities exceeded Company assets by approximately $1.8 million. (*Id.* at ¶ 11.) This brings the Court to the final issue that Plaintiff must successfully prove to succeed in a § 548 fraudulent transfer: whether the Company received less than a reasonably equivalent value in exchange for its funds.

■ Sullivan purchased $2,800.95 of women's clothing and accessories from Escada. (*Id.* at ¶¶ 7–8.) Therefore, the Escada Purchase consisted of the transfer of $2,800.95 of Company funds to Escada in exchange for women's clothing and accessories, which were not used in the production of marine engines. (*Id.*) The Court agrees with Plaintiff that this exchange did not provide the Company with a reasonably equivalent value in exchange for its funds. Escada makes the inventive argument that the Company received "reasonably equivalent value" as established by the market price of the merchandise determined objectively by the fashion-savvy buyer, not subjectively as the intrinsic value of the women's clothing and accessories as viewed by the Company. Unfortunately, the Court is not asked to determine "haute-couture." The Court must determine, as Plaintiff states, "whether the transfer benefited the *Company*." (Pl.'s Trial Br. at 3)(emphasis added.)

Escada's argument fallaciously blends Sullivan's purchase with that of the Company. In essence, Escada is asking the Court to pierce the corporate veil so as to find that Sullivan's purchase provided value to the Company because they were highly sought-after Escada products, not because they were "women's clothing and accessories" intrinsically useless to a ma-

rine specialty company. While exceptionally creative, this argument must fail. The Court is reluctant to find that Escada did not provide "value" at all, since it provided its goods in exchange for money, but the Code and case law would not support any other finding. The slippery-slope consonant with Escada's argument alone precludes the Court from agreeing with Escada. For these same reasons, Escada's argument that Sullivan was the initial transferee must fail as well.

■ To recover an avoided transfer, the debtor-in-possession must proceed under 11 U.S.C. § 550. In this case, Plaintiff wishes to use § 550(a)(1), which provides that the Plaintiff can recover property avoided under § 548 from the "initial transferee of such transfer". 11 U.S.C. § 550(a)(1) (2005). Escada argues that Sullivan was the initial transferee of the Company because she "acquired personal access, dominion and control over the Company bank account." (Def.'s Trial Br. at 3 ¶ I.) Escada cites the argument articulated by the Eleventh Circuit in *Andreini & Co. v. Pony Express Delivery Services, Inc.*, 440 F.3d 1296 (11th Cir.2006), in support of its position. The Court, bound by this Eleventh Circuit precedent, still finds in favor of Plaintiff, as Escada's argument is misplaced.

■ The Eleventh Circuit synthesized the idea by stating that "[m]ost circuit courts to have considered the issue, including the Eleventh Circuit, have adopted a 'control' or 'conduit' test to determine whether the recipient of an avoidable transfer of assets is the initial transferee." *Andreini & Co.*, 440 F.3d at 1300 (citations omitted). To explicate, the Eleventh Circuit stated that

> a recipient of an avoidable transfer is an initial transferee only if they exercise legal control over the assets received, such that they have the right

to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of debtor-transferor or the real initial transferee.

*Id.* (citations omitted). Yet the Eleventh Circuit augmented this test by differentiating between those with special relationships with the debtor *per se*, and those with special relationships with the debtor who have actual legal control of the assets. To elucidate, the Eleventh Circuit explained that

> even entities that have special legal relationships with the debtor-transferor can be initial transferees when they do, in fact, take legal control of an avoidable transfer; for example, when they receive assets directly from the debtor-transferor as compensation for services or in payment of a genuine debt. In these situations, the fiduciary or agent does exercise control over the transferred assets because they immediately become its own assets and are not simply held for its clients' purposes. Where a fiduciary, agent, or other entity with legal obligations to the debtor-transferor is the recipient of an avoidable transfer, the control test turns on the recipient's legal rights and obligations toward the transferred assets, not simply their legal relationship with the debtor-transferor or the ultimate use of the assets. To ascertain these rights and obligations, and decide whether such a recipient is an initial transferee under 11 U.S.C. § 550, courts must look at all the circumstances of the transaction that resulted in the avoidable transfer.

*Id.* at 1301 (internal citations and citations omitted). Therefore, the litmus test in determining initial transferee status is whether the transferee has an unequivocal

legal interest in the contested asset. Such was not the case here.

Sullivan was undoubtedly an agent of the Company. Yet, as the Eleventh Circuit enunciated, Sullivan's special relationship with the Company *per se* is not enough to establish initial transferee status. The question before the Court, then, is whether Sullivan had an unequivocal legal interest in the Company funds, so that she was free to make the Escada Purchase of her own volition. The answer is an indubitable no. Sullivan's use of Company funds to purchase merchandise from Escada *because* of her special position as owner or part-owner of the Company does not confer on her initial transferee status. Sullivan was a mere conduit in transferring funds from the Company in exchange for the merchandise from Escada.

In addition, Escada's contention also obscures the facts such that it abates its own argument. Assuming, *arguendo*, that Sullivan can be considered an initial transferee, then the transfer clearly did not provide the Company with reasonable value in exchange for its funds. Surely it is specious to contend that expensive clothing worn by an agent of a company provides a benefit for the company. As a result, the Court finds that Sullivan cannot be considered an initial transferee because she did not exercise legal control over the assets received. She acted as a conduit in transferring the Company funds directly to Escada, and such transfer did not provide the Company with reasonable value in exchange.[1] Thus, the Court finds that Plaintiff successfully proved all four elements of a fraudulent transfer pursuant to 11 U.S.C. § 548.

### CONCLUSION

The Court finds that Plaintiff met its burden of proving a fraudulent transfer under § 548. The Court also finds that Plaintiff proved that Escada was the initial transferee, and as such can recover its property under § 550. A judgment in accordance with these findings of fact and conclusions of law will be separately entered.

---

1. It is this same argument that precludes Escada from the protections afforded by 11 U.S.C. § 548(c), which provides that a transferee under § 548 fraudulent transfer "that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred ... to the extent that such transferee ... gave value to the debtor in exchange for such transfer...." 11 U.S.C. § 548(c) (2005). Whether reasonable value or simplistically "value", the Company received nothing in exchange for its funds. Sullivan was the sole beneficiary of the Escada Purchase, as she retained the benefit of wearing illustrious women's fashions.